ROBERT WEATHERLY, APPELLANT, V. BLUE CROSS BLUE SHIELD INSURANCE COMPANY, APPELLEE.

513 N.W.2d 347

Filed March 15, 1994.   No. A-92-238.

James R. Welsh, of Bradford, Coenen, Ashford & Welsh, for appellant.

Thomas E. Johnson and Steven D. Davidson, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellee.

SIEVERS, Chief Judge, and HANNON and MILLER-LERMAN, Judges.

HANNON, Judge.

While Michael Weatherly was alive, the defendant, Blue Cross Blue Shield Insurance Company, refused to pay the costs so that his testicular cancer condition could be treated by high doses of chemotherapy with bone marrow infusion. Robert

Weatherly commenced an action as Michael's father and next friend to obtain a declaratory judgment against the defendant determining that the defendant was obligated to pay for the treatment. Michael died before the issue was resolved, and Robert Weatherly was appointed personal representative of Michael's estate. As personal representative, Robert Weatherly filed a third amended petition, praying for recovery from the defendant based on wrongful death. The defendant did not object to the substitution of parties and causes of action, but demurred to the plaintiff's third amended petition on the ground that it did not state facts sufficient to constitute a cause of action. By this demurrer, the defendant raised the question of whether the "causes of action" (perhaps more correctly called theories of recovery) pled could be maintained under the wrongful death statutes of this state. The demurrer was sustained, and the case was dismissed after the plaintiff elected to stand on the third amended petition. The plaintiff appeals. We affirm in part and in part reverse, and we remand the cause for further proceedings on the fifth cause of action, because we believe the plaintiff stated a cause of action for the tort of bad faith.

## PLAINTIFF'S ALLEGATIONS

The allegations bearing on all of the theories of recovery in the plaintiff's petition may be summarized as follows: that the plaintiff is the personal representative of the estate of Michael Weatherly; that Michael was an insured under a medical insurance policy the defendant issued to his mother, a copy of which was attached to the petition; that his mother performed all of the terms and conditions to be performed by her under the policy; and that while the policy was in force, Michael contracted testicular cancer. The plaintiff alleges that Michael did not respond to traditional treatment for that condition and that Michael's prognosis was very poor unless he received high doses of chemotherapy with bone marrow infusion, a procedure that would cost in excess of $100,000.

The plaintiff further alleges that the treatment was reasonable and necessary, that notice was given to the defendant, and that the defendant failed and refused to pay for

the treatment. The plaintiff states that Michael died of testicular cancer on July 30, 1991, as a result of the defendant's failure to provide the benefits.

The plaintiff alleges six causes of action. He does so through the incorporation of certain paragraphs of the first cause of action into the other five causes of action, and he adds more allegations to the remaining five theories of recovery.

## NEGLIGENCE

In his first cause of action, the plaintiff alleges the defendant was negligent in six specific ways and then generally alleges the damages that are recoverable under the wrongful death statutes, Neb. Rev. Stat. §§ 30-809 (Reissue 1989) and 30-810 (Cum. Supp. 1992). The specific acts of negligence alleged will be set forth later when we consider whether the plaintiff states facts sufficient to constitute a cause of action for negligence.

## PAIN AND SUFFERING

In the second cause of action, the plaintiff alleges that due to the defendant's negligence, Michael suffered "excruciating mental and physical pain as a result of the testicular cancer and the knowledge that he was deprived of the loss of chance [sic] of additional medical treatment which could possibly force the cancer into remission." This cause of action has nothing to do with the wrongful death statutes. Pain and suffering endured by the decedent as a result of the conduct of a defendant is not an element that may be recovered under the wrongful death statutes. *Nelson v. Dolan*, 230 Neb. 848, 434 N.W.2d 25 (1989). However, Nebraska has long allowed the personal representative to join a separate cause of action for the recovery of any pain and suffering with a wrongful death action which arose from the same tort that caused the wrongful death. *Rhein v. Caterpillar Tractor Co.*, 210 Neb. 321, 314 N.W.2d 19 (1982); *Wilfong v. Omaha & C. B. Street R. Co.*, 129 Neb. 600, 262 N.W. 537 (1935). The Supreme Court recently held that a personal representative may also recover for fear and apprehension suffered by the decedent before and while aware of impending death, if death did in fact ensue. *Nelson v. Dolan, supra*. Even though this cause of action does not depend upon the wrongful death statutes, the plaintiff does incorporate the

allegations of negligence into this cause of action, and the correctness of the trial court's ruling on the demurrer as to this cause of action depends upon whether the plaintiff has alleged facts sufficient to state a cause of action for negligence. The fate of this cause of action is the same as the cause of action for wrongful death upon the theory of negligence.

### FUNERAL EXPENSES

In the third cause of action, the plaintiff alleges that he was compelled to pay $4,000 in funeral expenses for Michael, and the plaintiff seeks recovery of general and special damages, but he does not specify what damages might be claimed in addition to the funeral expenses. This cause of action can only be treated as a claim for the funeral expenses. When a beneficiary under the wrongful death statutes pays or becomes obligated to pay funeral expenses, these expenses may be recovered as a separate cause of action under the wrongful death statutes. *State Farm Mut. Auto. Ins. Co. v. Selders*, 187 Neb. 342, 190 N.W.2d 789 (1971). However, funeral expenses cannot be recovered without proof that the expenses represented the fair and reasonable value of the materials and services furnished. *Shields v. County of Buffalo*, 161 Neb. 34, 71 N.W.2d 701 (1955). The plaintiff did not allege that the funeral expenses of $4,000 were fair and reasonable, and therefore, he did not state a cause of action for funeral expenses, even if they are otherwise recoverable.

### BREACH OF CONTRACT

In the fourth cause of action, the plaintiff alleges the defendant breached the insurance contract. However, except to the extent of the allegations of negligence and the statement that the defendant refused to pay for the treatment, the plaintiff does not allege the manner in which he claims the defendant breached the contract. The plaintiff alleges the denial of benefits was a proximate, contributing cause of Michael's premature death and prays for general and special damages, along with a claim for funeral expenses of $4,000. This cause of action sounds in contract and is an attempt to recover damages for death under a contract theory. The Supreme Court in *Rhein v. Caterpillar Tractor Co.*, 210 Neb. 321, 314 N.W.2d 19 (1982),

and *Gengo v. Mardis*, 103 Neb. 164, 170 N.W. 841 (1919), clearly held that there can be no recovery for death except under the wrongful death statutes. This cause of action simply has no merit.

## BAD FAITH

The allegations in the fifth cause of action are intended to seek recovery under the tort of bad faith. These allegations will be set forth below when they are compared with the elements required for that tort.

## DUPLICATION

Finally, the sixth cause of action incorporates all of the other allegations in the petition again and then states Michael's death resulted from the "actions taken by the defendant." Except for some sort of strict liability, we cannot imagine any theory of recovery intended to be stated. Obviously, an insurance company could not be strictly liable under a tort theory, and this "cause of action" is a mere duplication of other causes. We find the demurrer to that cause should be affirmed because it is mere duplication of the plaintiff's previous causes of actions.

## ASSIGNMENTS OF ERROR

The defendant demurred on the grounds that the third amended petition did not allege facts sufficient to state a cause of action. In his brief, the plaintiff alleges the district court committed six errors by sustaining that demurrer; that is, it erred when it sustained the demurrer as to each of the six causes of action.

## STANDARDS OF REVIEW

A demurrer which challenges the sufficiency of the allegations is a general one. In a review of a ruling on a general demurrer, an appellate court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992); *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991); *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991). In a ruling on a demurrer, the petition is to be liberally construed; if as so construed the petition states a

cause of action, the demurrer is to be overruled. *Matheson v. Stork, supra.*

## ANALYSIS

Under common law, no cause of action existed "for damages growing out of injury by death." *Gengo v. Mardis*, 103 Neb. at 170, 170 N.W. at 843. To remedy this, the Nebraska Legislature adopted a statutory cause of action for wrongful death for the benefit of the widow or widower and next of kin. §§ 30-809 and 30-810. One of the wrongful death statutes states:

> Whenever the death of a person shall be caused by the wrongful act, neglect or default, of any person, company or corporation, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages . . . .

§ 30-809. Accord *Rhein v. Caterpillar Tractor Co.*, 210 Neb. 321, 314 N.W.2d 19 (1982). In his amended petition, the plaintiff states his action is brought under these statutes. This statement is not entirely correct, because the second cause of action does not fall under the wrongful death statutes. However, the statement is not an allegation of fact and, therefore, is not controlling.

■ About the same time that our state adopted the wrongful death statutes, it also adopted survival statutes. *Rhein v. Caterpillar Tractor Co., supra.* Nebraska's survival statutes are presently located at Neb. Rev. Stat. §§ 25-1401 and 25-1402 (Reissue 1989), and they provide for the survival of certain actions that did not survive the death of either the injured party or the wrongdoer at common law. The actions that survived at common law and the additional actions provided for by those statutes can be brought by the estate of the deceased. *Id.*

The facts alleged in the plaintiff's first cause of action, which alleges acts of negligence, and in the fifth cause, which alleges a breach of good faith, are based on tort theories of recovery,

which can only be brought under the wrongful death statutes. The plaintiff seeks damages in his second cause of action for the pain and suffering Michael allegedly endured before his death as a result of the defendant's denying benefits. This is not authorized under the wrongful death statutes, because these statutes allow recovery only for the surviving spouse and next of kin for their economic loss. *Rhein v. Caterpillar Tractor Co., supra.* However, if Michael had the right to recover the predeath damages alleged in that cause of action, that right survives his death and can be joined with any wrongful death action his estate might have. See *id.* Thus, the question is whether the plaintiff can recover under a tort theory from an insurer those damages allegedly caused when the insurer denied coverage.

## BREACH OF A CONTRACT AS A TORT

■ In *Braesch v. Union Ins. Co.*, 237 Neb. 44, 56, 464 N.W.2d 769, 776 (1991), the Supreme Court held that "(1) an injured policyholder who is also a 'covered person' or (2) a policyholder who is also a beneficiary may bring a cause of action in tort against the policyholder's insurer for failure to settle the policyholder's insurance claim." The claim in that case was for a bad faith failure to settle. However, the Supreme Court also necessarily discussed the general issue of when a plaintiff may sue in tort based on acts which could also constitute a breach of the contract.

■ The rationale behind the court's decision in *Braesch* was:

"Tort actions for breach of covenants implied in certain types of contractual relationships are most often recognized where the type of contract involved is one in which the plaintiff seeks something more than commercial advantage or profit from the defendant. When dealing with an innkeeper, a common carrier, a lawyer, a doctor or an insurer, the client/customer seeks service, security, peace of mind, protection or some other intangible. These types of contracts create special, partly noncommercial relationships, and when the provider of the service fails to provide the very item which was the implicit objective of the making of the contract, then contract damages are

seldom adequate, and the cases have generally permitted the plaintiff to maintain an action in tort as well as in contract."

(Emphasis omitted.) 237 Neb. at 52, 464 N.W.2d at 774-75 (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986)).

In *Braesch*, the Supreme Court further noted that the insured on a policy of insurance seeks security and protection from the policy and that there is necessarily a substantial difference in bargaining power between the insured and the insurer. The Supreme Court in *Braesch* cited cases from other jurisdictions in which the courts held that the disparity in bargaining position was the sole factor necessary to create a bad faith tort for failure to settle a first-party claim against an insurance company. See, e.g., *Rawlings v. Apodaca, supra*. The court in *Braesch* was concerned with whether an insured motorist could recover from the motorist's own insurance company for a bad faith refusal to settle a claim for uninsured motorist benefits. The policy in *Braesch* is a different policy than the policy in this case. However, it is difficult to imagine a policy of insurance that is more important, where the insured seeks maximum security and protection, than the case of a major medical insurance policy to be used in paying for needed medical care that is usually beyond the economic ability of most people to cover without insurance. It is also difficult to imagine anyone who is in a weaker bargaining position than a person in need of major medical care as compared to his or her medical insurance company that has the power to deny benefits. This is particularly true in view of the provisions of the contract which will be discussed below. The same reasons exist for allowing recovery in tort for the failure to perform under a medical insurance policy as exist for allowing a tort action for certain breaches under an automobile insurance policy, or a contract under which the services of an innkeeper, a lawyer, or a doctor are obtained.

We hold that under certain circumstances, a breach of the terms of an insurance policy by the insurer can be a tort. This is not to hold that the breach of any term of a contract may be sued as a tort, that a plaintiff may state a cause of action by

merely alleging a breach of a contract, or even that the facts alleged in the third amended petition justify recovery.

## DID THE PLAINTIFF STATE A CAUSE OF ACTION FOR BAD FAITH?

Nebraska case law recognizes two types of bad faith claims against an insurer: The first is a traditional third-party bad faith claim which arises when an insurer wrongfully fails to settle a claim brought by a third party against an insured. See *Hadenfeldt v. State Farm Mut. Auto. Ins. Co.*, 195 Neb. 578, 239 N.W.2d 499 (1976). The second type is a first-party bad faith action based upon allegations that the insurer, in bad faith, refused to settle with its own policyholder insured, who thereby suffered some type of direct loss. *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991).

▮ The standard of care required of an insurer in settling a claim with its policyholder is set forth in *Braesch*. The court adopted the language found in *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 691, 271 N.W.2d 368, 376 (1978), in which that court stated:

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the [insurance] policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. "Bad faith" by definition cannot be unintentional.

▮ The standard of care was further defined in *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 74, 469 N.W.2d 129, 135 (1991), in which the court stated that the tort of bad faith against an insurer "embraces any number of bad faith settlement tactics, such as inadequate investigation, delays in settlement, false accusations, and so forth." On the element of scienter, the *Ruwe* court found:

> The knowledge or reckless disregard element of the *Braesch* test may be inferred and imputed to an insurance company when there is a reckless indifference to facts or to proof submitted by the insured. . . . This reckless indifference to the facts or to the proof submitted by an

insured is shown by an insurer's failure to conduct a proper investigation and subject the results to a reasonable evaluation and review.

238 Neb. at 74, 469 N.W.2d at 135.

SUMMARY OF PLAINTIFF'S ALLEGATIONS OF THE
TORT OF BAD FAITH

In the third amended petition, the plaintiff incorporated many of the previous allegations into the fifth cause of action, which was entitled the "Bad Faith - Tort." The insurance contract was incorporated by reference. The significant contract provisions for this cause of action are as follows:

Benefits will not be provided for services and procedures and any drugs, supplies, or Durable Medical Equipment which are considered to be Investigative.

. . . .

Treatment is considered investigative when the service, procedure, drug, or treatment modality has progressed to limited human application, but has not achieved recognition as being proven and effective in clinical medicine.

Such recognition may be achieved through the following:

1. Final approval for the use of a specific service, procedure, drug or treatment modality for a specific diagnosis from the appropriate governmental regulatory body;

2. Scientific evidence permitting a consensus conclusion recognizing the effectiveness of the specific service, procedure, drug or treatment modality on health outcomes for a specific diagnosis.

We shall determine whether a service, procedure, drug or treatment modality is Investigative.

The policy has numerous exclusions and exemptions, and the plaintiff does not allege the basis upon which the defendant denied benefits. The plaintiff does not allege how the terms of the preceding quote were satisfied. However, if the plaintiff merely alleged these terms were satisfied, the plaintiff would merely be alleging a cause of action for breach of contract. The

plaintiff does allege the requested treatment was customary. This broad allegation covers the requirements of the quoted provisions.

Because the plaintiff incorporates numerous allegations by reference, we must consider all of the incorporated allegations. Some of them are clearly inapplicable to the tort of bad faith, but some of them support a claim of damages by bad faith.

The allegations of negligence are incorporated by reference. The plaintiff alleges that the defendant failed to properly and reasonably investigate the proposed treatment, failed to reasonably investigate and determine that the proposed treatment was necessary, failed to reasonably determine that the proposed treatment was not experimental, failed to reasonably determine that the proposed treatment was within the scope of the policy, and failed to reasonably determine that the treatment was generally accepted by the medical community as a normal and customary treatment. We conclude that these allegations, except the allegations of failure to properly investigate, state facts or conclusions relating to negligence only, because they do not contain the element of intent required by the tort of bad faith.

At first blush, these allegations of failure to reasonably investigate and determine appear relevant because the above propositions from *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991), and *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991), are expressed in terms of reasonability, that is, the absence or lack of "a reasonable basis," or failure to "subject the results to a reasonable evaluation and review."

The remaining allegations in the third amended petition which tend to state a cause of action for bad faith (summarized except where the exact wording might be significant) are (1) the status of the parties and their contractual relationship; (2) that Michael contracted the cancer and did not respond to treatment; (3) that "the prognosis . . . was very poor unless he received [the chemotherapy treatment] with bone marrow infusion"; (4) that the treatment would cost in excess of $100,000; (5) that the treatment is reasonable and customary; (6) that within the time specified by the contract, the plaintiff

"[gave] notice of his claim and made proof to the defendant that such treatment was necessary to save" Michael's life; (7) that Michael died on July 30, 1991, "as a result of the defendant refusing" to pay for the treatment; (8) that Michael's father was dependent upon him; (9) that the defendant was "obliged to act in good faith and to not breach the implied covenant of fair dealing" and "through its actions as set forth above, breached" these covenants; (10) "[t]hat the defendant knew, or should have known, that a denial of the benefits" would cause Michael's death; (11) "[t]hat no reasonable basis existed for the denying of benefits"; (12) "[t]hat the defendant acted in reckless disregard of the fact that a lack of reasonable basis existed for denying" Michael's claim; and (13) "[t]hat, as a result of the bad faith of the defendant, the plaintiff's decedent sustained damages as set forth herein."

The allegation of conclusions and not facts is fatal to a petition when attacked by a general demurrer. *Webber v. Andersen*, 187 Neb. 9, 187 N.W.2d 290 (1971). "An allegation that an act is done in good faith or bad faith is a mere conclusion." *State ex rel. Gustafson Co. v. Crookston Trust Co.*, 222 Minn. 17, 30, 22 N.W.2d 911, 920 (1946). Insofar as the allegations concerning the tort of bad faith, the plaintiff appears to have attempted to follow the rules in *Braesch*.

In *Ruwe*, the Supreme Court stated:

> Ruwe's principal allegation of bad faith is that Farmers denied his claim without a proper and thorough investigation of the fire scene and falsely accused him of arson without a reasonable basis. The knowledge or reckless disregard element of the *Braesch* test may be inferred and imputed to an insurance company when there is a reckless indifference to facts or to proof submitted by the insured. . . . This reckless indifference to the facts or to the proof submitted by an insured is shown by an insurer's failure to conduct a proper investigation and subject the results to a reasonable evaluation and review. . . . Ruwe's second amended petition sufficiently alleged Ruwe's status as an injured policyholder-covered person, the absence of a reasonable basis for Farmers' denial of the benefits of the fire insurance policy, and Farmers'

knowledge or reckless disregard of the lack of a reasonable basis for denying Ruwe's claim.

(Citations omitted.) 238 Neb. at 74, 469 N.W.2d at 135.

Insofar as the allegations of liability are concerned, it appears the defendant admits Michael was a covered person under the insurance policy. The plaintiff alleges the treatment is customary. The plaintiff alleges the absence of a reasonable basis to deny Michael the benefits of the policy and alleges the defendant's knowledge, or reckless disregard of the lack of knowledge, is not a reasonable basis for denying benefits. These allegations are substantially the same as, if not identical to, the allegations in *Ruwe*. We recognize the difficulty in alleging with specificity a negative, or an omission to do an act. On the basis that this style of allegation has been recognized in *Ruwe*, we find the plaintiff adequately alleged Michael was denied benefits by the defendant's bad faith.

The plaintiff must also allege causation and damages. In *Ruwe*, the plaintiff alleged he suffered economic losses and mental suffering as the proximate result of Farmers' wrongful failure to pay. Here, the nature of the case prevents similar allegations. However, the plaintiff must allege causation and some damages under the wrongful death statutes. The following allegations relate to these subjects: (1) that Michael died as a result of the defendant's refusing to pay for high doses of chemotherapy with bone marrow infusion; (2) that Michael died "as a result of the defendant refusing to provide the medical benefits for the necessary chemotherapy and bone marrow infusion"; (3) that Michael "suffered the loss of chance to receive reasonable and customary treatment for testicular cancer, which ultimately caused his death"; and (4) that the plaintiff was Michael's father and was dependent upon him.

The plaintiff mixes allegations of causation connected with the recovery on the theory of negligence and only uses the term "proximate cause" in connection with the conduct the plaintiff termed "negligent," but this is the same conduct the plaintiff termed "bad faith," as discussed above. We therefore conclude the plaintiff stated a cause of action for the tort of bad faith.

## RECOVERY UNDER NEGLIGENCE THEORY

On the issue of negligence, the plaintiff alleges that the requested treatment is "reasonable and customary"; that the "defendant failed and refused to pay for the treatment, even though such benefits are due"; and that Michael died as a result of the defendant's refusing to provide the benefits. The plaintiff then alleges the defendant was negligent in the following particulars:

> a) In failing to properly and reasonably investigate the proposed treatment of the plaintiff's decedent;

> b) In failing to reasonably investigate and determine that the proposed treatment of the plaintiff's decedent was necessary for the purposes of prolonging his life;

> c) In failing to reasonably determine that the proposed treatment of the plaintiff's decedent was neither experimental, investigatory, nor for research purposes;

> d) In failing to reasonably determine that the proposed treatment of the plaintiff's decedent was within the scope of the insurance policy at issue;

> e) In failing to reasonably determine that the proposed treatment of the plaintiff's decedent was generally accepted by the relevant medical community as a normal and customary treatment for the plaintiff's decedent's condition;

> f) In unreasonably attempting to enforce provisions of a contract which were unconscionable as a matter of law.

The last specification is plainly not an allegation of negligence. The other allegations mainly allege the defendant did not conduct a reasonable investigation or make a reasonable determination that Michael was entitled to the claimed benefits.

In *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991), the Supreme Court stated that cases involving first- or third-party plaintiffs and an insurer require something more than negligence; some intentional wrongdoing is required. Citing several cases to support its conclusion, the court held: " ' "Good faith implies honesty, fair dealing and full revelation. . . . Bad faith implies dishonesty, fraud and concealment. . . . Neither mistaken judgment nor unreasonable

judgment is the equivalent of bad faith. . . ." ' " 237 Neb. at 56, 464 N.W.2d at 777. The *Braesch* court concluded that "[a] requirement of intentional or reckless conduct arises from the commonsense notion that '[t]he insurer . . . must be accorded wide latitude in its ability to investigate claims and to resist false or unfounded efforts to obtain funds not available under the contract of insurance.' " 237 Neb. at 58, 464 N.W.2d at 778.

It appears, then, that as part of the Wisconsin rule in *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978), as expressly adopted by Nebraska in *Braesch*, something more than ordinary negligence must be pled in order to state a cause of action in tort for a first-party bad faith claim against an insurance company for failure of the company to extend coverage.

We believe that the tort of bad faith was adopted as a means of allowing recovery by insureds against insurers because courts did not find the negligence tort to be fair in that situation. In *Braesch*, the plaintiff did not seek recovery under a theory of negligence, and therefore, the Supreme Court did not have the opportunity to reject negligence as a basis for recovery in that case. However, in adopting the first-party tort of bad faith in *Braesch*, it frequently contrasted the bad faith standard with a negligence standard.

## CONCLUSION

In summary, the plaintiff has failed to allege facts sufficient to state a cause of action against the defendant upon any theory except the tort of bad faith. Therefore, the district court correctly sustained the defendant's demurrer to plaintiff's petition on each of the other causes of action, but not that based on bad faith. The trial court erred in sustaining the demurrer on that theory, and that part of the judgment is reversed, and the cause is remanded for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

SIEVERS, Chief Judge, dissenting.

I cannot join in the opinion of my respected colleagues. I would hold that the district court properly sustained the demurrer to the third amended petition, which for simplicity I shall refer to as the petition.

I believe the essence of the plaintiff's lawsuit may be fairly stated as follows: The decedent, Michael Weatherly, was afflicted with testicular cancer at a time when his mother carried group health insurance through Blue Cross Blue Shield Insurance Company (BCBS) by virtue of her membership in the Nebraska State Education Association. Michael sought treatment that is alleged in the petition to be "high doses of chemotherapy with bone marrow infusion," which would have cost in excess of $100,000. BCBS refused to pay for that treatment.

According to the petition, BCBS caused Michael's death, *or* "denied plaintiff's decedent the opportunity to try to force the cancer into remission or possibly and [sic] ultimate cure," *or* caused Michael to suffer "the loss of chance to receive reasonable and customary treatment for testicular cancer," *or* deprived Michael "of the . . . chance of additional medical treatment which could possibly force the cancer into remission or a cure." I have quoted from the petition at some length to illustrate the prominence in the allegations of the words "possibly," "reasonable and customary," and "loss of chance."

The petition denominates six "causes of action." They are not causes of action, but are either theories of recovery or elements of damage. That the petition is a pleading morass should be evident from the attempts of the majority opinion to deal with six so-called causes of action. I take a somewhat different view of the case. I categorize the case as a suit for the wrongful refusal to pay for treatment sought by an afflicted insured which allegedly would have made a difference in the outcome of his cancer. The Supreme Court has not written on such a lawsuit, but it is my belief that the legal principles have already been pronounced which allow the resolution of this particular appeal. My analysis initially focuses on whether this is a cause of action based upon tort or contract.

However, some rules of pleading should first be delineated. While it is not necessary to state a cause of action in any particular form, *Waite v. Samson Dev. Co.*, 217 Neb. 403, 348 N.W.2d 883 (1984), and while in actions not involving extraordinary remedies, general pleadings are to be liberally

construed in favor of the pleader, *Hutmacher v. City of Mead*, 230 Neb. 78, 430 N.W.2d 276 (1988), proper pleading nonetheless requires a petition to state in logical and legal form the facts which constitute the cause of action, to define the issues to which the defendant must respond at trial, and to inform the court of the real matter in dispute. *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984). See Neb. Rev. Stat. § 25-804 (Reissue 1989). It is the facts well pleaded, not the theory of recovery or legal conclusions, which state a cause of action. *Moore v. Puget Sound Plywood*, 214 Neb. 14, 332 N.W.2d 212 (1983).

In *McCurry v. School Dist. of Valley*, 242 Neb. 504, 496 N.W.2d 433 (1993), the court found the petition's "conclusion" that the school district had negligently entrusted the decedent's transportation to a volunteer driver on a ski trip did not state a cause of action. Thus, the pleader's labels are not important to me—I look to the well-pleaded facts.

In *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984), the Supreme Court acknowledged that the dividing line between breaches of contract and torts is often dim and uncertain, but held that the "character of an action as one in tort or on contract is determined by the nature of the grievance, not by the form of the pleadings, with consideration being given to the facts which constitute the cause of action." *Id.* at 437, 345 N.W.2d at 304-05. The court nonetheless said that accompanying every contract is a common-law duty to perform with skill, care, reasonable expedience, and faithfulness that which the party agreed to do. However, *Lincoln Grain* did not involve a written contract, but, rather, an agreement for professional auditing services to be performed according to "generally accepted auditing standards," and the case was tried below on a tort theory. Thus, the Supreme Court resolved it on the same basis upon which it was tried. I conclude, however, that *Lincoln Grain* does not eliminate all distinctions between contract actions and negligence actions. In so concluding, I observe Justice Caporale's concern that all civil jurisprudence is being forsaken but for the law of negligence and that matters are less complicated when contractual actions are tried as contracts, not torts. *Hiway 20 Terminal, Inc. v.*

*Tri-County Agri-Supply, Inc.*, 232 Neb. 763, 443 N.W.2d 872 (1989) (Caporale, J., concurring). In my view, the case before us shows why we should not allow the obfuscation of the important differences between tort and contract actions. Additionally, since *Lincoln Grain*, the Supreme Court has authored *J.L. Healy Constr. Co. v. State*, 236 Neb. 759, 463 N.W.2d 813 (1990), which I read as a strong iteration of the notion that torts are torts, and contracts are contracts. The court stated:

> The principle determinative of this issue was set out most recently in a case decided after the trial in this case, but before the briefs were filed herein. In *L.J. Vontz Constr. Co. v. State, supra* [230 Neb.] at 382, 432 N.W.2d at 11, we said: "[T]o determine whether an action is based on a contract or a tort, a court must examine and construe a petition's essential and factual allegations by which the plaintiff requests relief, rather than the legal terminology utilized in the petition or the form of a pleading."
>
> We have also said: "It is recognized that if an action is not maintainable without pleading and establishing the contract, if the gist of the action is the breach of the contract, either by malfeasance or nonfeasance, it is in substance, whatever may be the form of the pleading, an action on the contract." *Fuchs v. Parsons Constr. Co.*, 166 Neb. 188, 193, 88 N.W.2d 648, 652 (1958). See, also, *In re Appeal Roadmix Construction Corporation*, 143 Neb. 425, 9 N.W.2d 741 (1943); *McNeel v. State*, 120 Neb. 674, 234 N.W. 786 (1931).

236 Neb. at 763, 463 N.W.2d at 816.

*L. J. Vontz Constr. Co. v. State*, 230 Neb. 377, 432 N.W.2d 7 (1988), which was relied upon in *J.L. Healy Constr. Co., supra*, emphasizes that we must look to the source of the duty:

> Contract actions, which arise from a breach of a duty imposed on one by an agreement, protect a plaintiff's interest in or right to performance of another's promises, whereas tort actions, which arise from a breach of a duty imposed by law, protect a plaintiff's interest or right to be free from another's conduct which causes damage or loss to the plaintiff's person or property.

*Id*. at 382-83, 432 N.W.2d at 11.

Looking to the facts which are pled in the petition, it is clear that the only duty owed by BCBS to Michael comes from the insurance policy, which the plaintiff attached to the petition and incorporated therein by reference. It is necessary to plead and establish the contract, and I conclude that the plaintiff's cause of action is an action on a contract. Michael was entitled to BCBS' performance of its obligations under the contract. If those obligations were breached, whether by nonfeasance or malfeasance, then there can be recovery for the damages caused by that breach. Accordingly, one must turn to the contract of insurance to determine the extent of BCBS' duty to Michael and then examine the allegations of the petition to determine if facts are alleged which state a cause of action on the contract.

Factually, Michael's diagnosis is alleged with no more precision than "testicular cancer," and the desired treatment modality is alleged only as "high doses of chemotherapy with bone marrow infusion." However, the exclusions for payment of medical services under the contract are part of the petition by virtue of their inclusion by the plaintiff. The pertinent exclusion provides: "Benefits will not be provided for services and procedures and any drugs, supplies, or Durable Medical Equipment which are considered to be Investigative." The contract defines "investigative treatment" as follows:

> Treatment is considered investigative when the service, procedure, drug, or treatment modality has progressed to limited human application, but has not achieved recognition as being proven and effective in clinical medicine.
>
> Such recognition may be achieved through the following:
>
> 1. Final approval for the use of a specific service, procedure, drug or treatment modality for a specific diagnosis from the appropriate governmental regulatory body;
>
> 2. Scientific evidence permitting a consensus conclusion recognizing the effectiveness of the specific service, procedure, drug or treatment modality on health outcomes for a specific diagnosis.
>
> We shall determine whether a service, procedure, drug or treatment modality is Investigative.

By attaching the contract and incorporating it by reference, the plaintiff made it part of the petition. See, *Gilbert Central Corp. v. Overland Nat. Bank*, 232 Neb. 778, 442 N.W.2d 372 (1989); *Bank of Stockham v. Alter*, 61 Neb. 359, 85 N.W. 300 (1901). Matters contained in pleadings are judicial admissions. *Cook v. Beerman*, 202 Neb. 447, 276 N.W.2d 84 (1979). Therefore, that payment is unavailable for investigative treatment is a matter which is part of the plaintiff's petition. Thus, the plaintiff must allege facts which establish that BCBS had a duty to pay for the proposed treatment, which means that it was outside the exclusion for investigative treatment.

The petition characterizes the treatment modality of high doses of chemotherapy with bone marrow infusion as "reasonable and customary." The standard of review applicable to this case is found in *Braesch v. Union Ins. Co.*, 237 Neb. 44, 46, 464 N.W.2d 769, 771 (1991):

> In reviewing an order sustaining a demurrer, this court accepts the truth of facts well pled and the factual and legal inferences which reasonably may be deduced from such facts, but does not accept conclusions of the pleader. . . . In ruling on a demurrer, the petition is to be liberally construed; if as so construed the petition states a cause of action, the demurrer is to be overruled. . . . A court may not assume the existence of any facts not alleged, find facts in aid of the pleading, or consider evidence which may be introduced at trial.

(Citations omitted.)

The plaintiff's petition contains conclusions, not facts, when the proposed treatment is alleged only to be "reasonable and customary." What facts are pled which make it so? The answer is none. In my view, there must be factual allegations that the proposed treatment has achieved recognition as being proven and effective in clinical medicine, and the policy gives two ways in which that standard can be met, but no facts are alleged to satisfy either. The plaintiff has not pled facts showing that the treatment has achieved recognition as being "proven and effective in clinical medicine," nor is there a pleading of a specific diagnosis of the decedent's cancer; the stage of the cancer; the specific treatment protocol which is proposed; or

the extent, if at all, to which such treatment protocol has either been given appropriate governmental regulatory body approval or achieved a consensus conclusion as to effectiveness with respect to a specific diagnosis. "Reasonable and customary" is a conclusion. No cause of action is stated in contract.

I now turn to the matter of bad faith. In *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991), the court quoted with approval *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 692, 271 N.W.2d 368, 377 (1978), where the Wisconsin court held:

> The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, *i.e.*, would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances.

In the seminal case on bad faith actions, *Braesch v. Union Ins. Co.*, 237 Neb. at 57, 464 N.W.2d at 777, the court makes it clear that " 'the tort of bad faith is an intentional one.' " My colleagues have obviously concluded that the petition alleges such a tort. I disagree. In my view, the fundamental factual prerequisites for a conclusion that BCBS has engaged in an intentional tort of bad faith are that Michael's cancer was treatable by a specific protocol, which was not investigative, and thus, that BCBS committed an intentional act of bad faith toward Michael when it denied payment for such treatment.

Even if BCBS did nothing in the way of investigation of the proposed treatment and completely ignored Michael's request for that treatment, it is of no consequence unless the requested treatment was one, as a factual matter, for which it was obligated to pay. Thus, in order to allege the tort of bad faith in this situation, the plaintiff was bound to allege facts establishing either that the proposed treatment was not investigative, which BCBS knew, *or* that BCBS would have discovered that it was not investigative had BCBS undertaken to determine the facts. In either sense, it could then be said that BCBS' conduct was intentional and thus in bad faith when it denied payment for treatment which it either knew to be

noninvestigative or would have found to be noninvestigative had it checked. No matter which way the situation is viewed, allegations of facts showing that the proposed treatment was not investigative are essential elements of any claim for bad faith. An allegation that the proposed treatment was "reasonable and customary" and that BCBS denied Michael the possible chance of trying to put his cancer into remission is just a conclusion of the pleader and is obviously insufficient to withstand a demurrer. I would also hold that the district court properly sustained the demurrer with respect to the attempt to state a cause of action for the tort of bad faith.

Finally, there are difficult and complicated issues presented in this case concerning what must be pled with respect to "loss of chance" to survive. Despite the obviously exaggerated allegations of the petition, BCBS did not cause Michael's death. Rather, he died from testicular cancer. Thus, the petition must address the matter of loss of chance with factual allegations, not nebulous and contradictory conclusions. The majority opinion does not address this difficult issue. Nor does the petition have any factual allegations about the nature and extent of the chance allegedly lost. In my view, the mere possibility of cure or survival is not a sufficient factual allegation. It is not alleged whether the chance was 1 in 2, 1 in 10, 1 in 100, 1 in 1,000, or 1 in a million. I save for another day, because the petition is otherwise flawed, full discussion of the issue of whether the loss of a chance to survive, no matter how slim, can be the basis for liability, or whether there must be some bright-line test or threshold of probability.

I would uphold the sustaining of the demurrer. The rule is that it is an abuse of discretion by the trial court to sustain a demurrer without giving leave to amend where there is a reasonable possibility that the defect can be cured. *Newman Grove Creamery Co. v. Deaver*, 208 Neb. 178, 302 N.W.2d 697 (1981). However, the record shows that the plaintiff elected to stand on the third amended petition, but it does not state a cause of action. I would affirm.