776 N.W.2d 1 (2009)
278 Neb. 1045
Maria Ofelia CORONA DE CAMARGO, as Personal Representative of the Estate of Joaquin Camargo-Martinez, Sr., appellant,
v.
Arthur J. SCHON, an Individual, et al., appellees.
Maria Ofelia Corona de Camargo, as Personal Representative of the Estate of Cristobal Camargo-Corona, appellant,
v.
Arthur J. Schon, an Individual, et al., appellees.
Nos. S-09-166, S-09-167.
Supreme Court of Nebraska.
December 4, 2009.
*4 Jason M. Finch and Kevin J. McCoy, of Smith, Gardner, Slusky, Lazer, Pohren & Rogers, L.L.P., Omaha, for appellant.
Thomas A. Grennan, Elizabeth M. Callaghan, and Francie C. Riedmann, of Gross & Welch, P.C., L.L.O., Omaha, for appellees Arthur J. Schon, Mary E. Schon, Schon Enterprises, Inc., and Sara Gonzalez.
Lawrence E. Welch, Jr., of Welch Law Firm, P.C., for appellee General Fire & Safety Equipment Company of Omaha, Inc.
Gregory G. Barntsen and Marvin O. Kieckhafer, of Smith Peterson Law Firm, L.L.P., Council Bluffs, IA, for appellee Multi-Vest Realty Co.
*5 HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
The principal issue in these consolidated appeals is whether the 2-year statute of limitations for wrongful death actions governs personal injury actions brought on behalf of the victims' estates to recover for the pain and suffering they experienced before death. We hold that it does not.

FACTS
On August 1, 2006, a fire occurred in the Colonial Apartments building, killing Joaquin Camargo-Martinez, Sr., and Cristobal Camargo-Corona. The building was owned by Arthur J. Schon and Mary E. Schon. General Fire & Safety Equipment Company of Omaha, Inc. (General Fire), allegedly installed, maintained, and/or inspected the fire protection system for the Colonial Apartments.
Maria Ofelia Corona de Camargo is the personal representative of the decedents' estates. Cristobal was her son, and Joaquin was her husband. On August 4, 2008, Maria filed complaints against the Schons; the Schons' company, Schon Enterprises, Inc.; Sara Gonzalez, the manager of the Colonial Apartments building; and General Fire. She also filed suit against Multi-Vest Realty Co. (Multi-Vest). Maria and General Fire have since entered into a settlement agreement, and General Fire is no longer a party to this appeal.
Maria alleged two causes of action: (1) personal injury of the victims, including their physical and mental pain and suffering, fear or apprehension of imminent death, or other mental anguish from the time they became aware of the fire until their deaths, and (2) wrongful death recovery for Maria's loss of love, support, services, comfort, solace, protection, society, companionship, counseling, advice, and guidance.
The defendants the Schons, Schon Enterprises, the building manager, and General Fire moved to dismiss Maria's complaints as barred by the wrongful death 2-year statute of limitations. At a hearing in connection with the motions, the court considered various exhibits offered by the defendants establishing the date of the fire and the victims' deaths.
Defendant Multi-Vest filed motions for summary judgment on the ground that Multi-Vest lacked any ownership or other duties in relationship to the Colonial Apartments. According to an affidavit signed by Mary, as president of Multi-Vest, Multi-Vest paid the building manager's wages, but she was on loan to Schon Enterprises. Schon Enterprises reimbursed Multi-Vest for all of its wage payments to the building manager during the time she worked as the manager of the Colonial Apartments. Mary further testified that Multi-Vest had no ownership interest or managerial duties in connection with the Colonial Apartments. Multi-Vest also introduced into evidence the rental agreement demonstrating that Maria rented from Schon Enterprises, and not from Multi-Vest.
At the hearing on the motions, Multi-Vest argued that in addition to having no duty, Maria's actions were barred by the 2-year statute of limitations. The 2-year bar was raised in Multi-Vest's answers to Maria's complaints.
The district court dismissed all of Maria's claims as barred by the 2-year statute of limitations. In so doing, the court characterized all of the parties' motions as motions to dismiss. The court did not *6 specifically address whether summary judgment was proper as to Multi-Vest on the alternative ground that it lacked any duty. On appeal, Maria admits the wrongful death claims were barred because the claims were filed more than 2 years after the incident, but she argues that the personal injury actions are governed by the 4-year statute of limitations applicable to tort action.[1] It is not disputed that the claims were filed within 4 years of the incident.

ASSIGNMENT OF ERROR
Maria asserts that the district court erred in concluding that the personal injury actions brought by the victims' estates was barred by the statute of limitations.

STANDARD OF REVIEW
Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below.[2]
Which statute of limitations applies is a question of law that an appellate court must decide independently of the conclusion reached by the trial court.[3]
In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.[4]

ANALYSIS
We begin by noting that although the district court characterized all the motions as motions to dismiss, they should in fact be considered motions for summary judgment. Multi-Vest's motions never purported to be anything other than motions for summary judgment, and a hearing was held in which the parties referred to the motions as motions for summary judgment and considered evidence in support of the motions.
As for the remaining defendants, although they referred to their motions as motions to dismiss, they offered several exhibits at the hearing, including an affidavit by the fire captain demonstrating the date of the fire and death certificates demonstrating the dates Cristobal and Joaquin died. When a matter outside the pleadings is presented by the parties and accepted by the trial court, a defendant's motion to dismiss must be treated as a motion for summary judgment.[5]
It is true that when receiving evidence which converts a motion to dismiss into a motion for summary judgment, it is important for the trial court to give the parties notice of the changed status of the motion.[6] It does not appear that Maria was given such notice. However, the purpose of the notice is to give the party sufficient opportunity to discover and bring forward factual matters which may become relevant in the summary judgment context, as distinct from the dismissal context.[7] *7 And Maria was given a reasonable opportunity to present argument and evidence relevant to the statute of limitations issue. Indeed, Maria now concedes the underlying facts pertinent to this issue are not in dispute, i.e., that her claims were made more than 2 years after the occurrence. Thus, while the motions to dismiss were converted into motions for summary judgment without notice to Maria, there was no prejudice, because the motions presented an issue of law of which Maria was notified in the motions to dismiss.[8]
We now determine whether, as a matter of law, the decedents' pain and suffering claims are governed by the 2-year wrongful death statute of limitations. We also determine whether, viewing the evidence in a light most favorable to Maria, there is a material issue of fact that Multi-Vest owed no duty to the decedents.

STATUTE OF LIMITATIONS
The defendants do not dispute that a cause of action for pain and suffering will generally survive a victim's death. The dispute is whether such a claim is encompassed by a cause of action for wrongful deathor at least by the wrongful death statute of limitations.[9] We conclude that a claim on behalf of the victim's estate for the victim's predeath pain and suffering is separate and distinct from a wrongful death action brought on behalf of the next of kin for his or her damages incurred as a direct result of the victim's death. Accordingly, claims for predeath pain and suffering are not governed by the 2-year statute of limitations.
Section 30-809(1) sets forth a wrongful death action:
Whenever the death of a person ... is caused by the wrongful act, neglect, or default of any person, company, or corporation, and the act, neglect, or default is such as would, if death had not ensued, have entitled the person injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which, would have been liable if death had not ensued, is liable in an action for damages, notwithstanding the death of the person injured, and although the death was caused under such circumstances as amount in law to felony.
The defendants argue that this provision plainly created but a single cause of action for wrongful death which encompasses any actions for damages the persons injured would have had but for the fact that death ensued.
The defendants misread the statute. The focus of the broad language of § 30-809(1) is to list who may be sued. While § 30-809(1) refers broadly to "an action for damages," we disagree with the defendants' contention that this implies wrongful death actions are the only means to recover any and all damages relating to the event causing the victims' deaths.
In addition, § 30-809(1) must be read in conjunction with § 30-810. Section 30-810 states in relevant part:
[The action] shall be brought by and in the name of the person's personal representative for the exclusive benefit of the widow or widower and next of kin. The verdict or judgment should be for the amount of damages which the persons in *8 whose behalf the action is brought have sustained.[10]
In Nelson v. Dolan,[11] we explained that this language limits a wrongful death recovery to the loss suffered by a decedent's next of kin and that it provides no basis upon which to recover a decedent's own damages. The next of kin may recover in a wrongful death action only those losses sustained after the injured party's death by reason of being deprived of what the next of kin would have received from the injured party from the date of his or her death, had he or she lived out a full life expectancy.[12] Consistent with the fact that wrongful death recovery is for injuries suffered solely by the next of kin, § 30-810 allows that "[s]uch amount shall not be subject to any claims against the estate of such decedent." In Nelson, we specifically held that the pain and suffering of the deceased is not an element that may be recovered under the wrongful death statutes.[13]
Although not covered by the wrongful death statutes, we also held in Nelson that a claim for predeath pain and suffering survived as a separate cause of action.[14] We cited to Neb.Rev.Stat. § 25-1401 (Reissue 2008) of the survival and abatement statutes to conclude that such a claim endures. In particular, we indicated that predeath pain and suffering was an injury to a "personal estate" as referred to in § 25-1401. Section 25-1401 states in full:
In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to real or personal estate, or for any deceit or fraud, shall also survive, and the action may be brought, notwithstanding the death of the person entitled or liable to the same.
The defendants argue that our jurisprudence holding that predeath pain and suffering is a distinct cause of action under § 25-1401 is wrong. They argue that pain and suffering cannot be an injury to a "personal estate" and that, at common law, an action for pain and suffering abated with a victim's death. But defendants fail to recognize that in Wilfong v. Omaha & C.B. Street R. Co.,[15] we clearly held that under the organic law of this state, the right to bring a personal injury action survives the death of the victim. While it was the rule under English common law that such claims abate upon the victim's death, the Legislature had mandated that Nebraska adopt only "[s]o much of the common law of England as is applicable and not inconsistent with the Constitution of the United States, with the organic law of this state, or with any law passed or to be passed by the Legislature of this state...."[16] We found the English common-law rule to be, by many accounts, the least rational of its rules. Moreover, the English rule was in part justified by the need to quell the vindictive and quasi-criminal nature of suits brought by the decedent's *9 estate, and we said that this policy was inapplicable in Nebraska because we do not allow for punitive damages.
Finally, we concluded that the English rule was contrary to the Nebraska Constitution, which mandates that "every person ... shall have a remedy by due course of law."[17] We stated:
In view of the obvious evil sought to be prevented or remedied by the constitutional provision quoted, so far as "personal injuries" are concerned, the purport of its language is to wholly invalidate and destroy the legal effect and force of the [English] common-law maxim, viz., actio personalis moritur cum persona.[18]
Thus, we held that under our constitution, a cause of action existed for personal injury that "neither expressly nor by necessary implication requires the institution of a suit prior to the injured person's death as a condition precedent to recovery by his administrator, nor in any manner conditions the remedy it provides on that fact."[19] "[T]he amount that the injured person would be entitled to recover in his lifetime would amount to damages to his personal estate, which on his death would go to his next of kin to be distributed as personal estate."[20]
Perhaps some of the defendants' confusion about the state of our common law stems from the fact that we have distinguished these "survival actions"[21] from revival of actions brought by the decedent prior to death, which, under our common law, do abate upon the victim's death.[22] Also, we have said somewhat obliquely that an action "for the death of a human being" did not exist at common law.[23] This statement, however, refers only to the cause of action which is based on damages stemming from the death itself. That cause of action inures solely to the next of kin, and exists only by virtue of the wrongful death statutes.[24] We conclude that § 25-1401 is applicable in establishing a "survival claim" as a proper cause of action, separate and distinct from the wrongful death statutes, because a survival claim is an action "which survive[s] at common law."[25] And, as we explained in Hindmarsh v. Sulpho Saline Bath Co.,[26] a claim for predeath pain and suffering may be either prosecuted independently or joined with a wrongful death action.
While we have never directly addressed the applicable statute of limitations for a survival claim, we find no logical reason to conclude that a survival claim falls under the wrongful death statute of *10 limitations. This is especially true when we have heretofore taken pains to distinguish survival claims from claims for wrongful death. We find the case of Rhein v. Caterpillar Tractor Co.[27] instructive. The personal representative in Rhein had filed suit more than 2 years after an accident which had killed the victim, but the personal representative sought to distinguish the action from a wrongful death action by seeking recovery for damages which the decedent would have been entitled to recover had he lived, including decedent's alleged loss of future earning capacity and enjoyment of life. In affirming the district court's dismissal for failure to bring the claim within 2 years, we did not state that all damages stemming from any tortious incident resulting in death would be encompassed by the wrongful death statute of limitations. Instead, we explored in great detail the facts of the case in order to determine whether there were any injuries that occurred to the decedent prior to and apart from the death itself. We concluded that because the facts were undisputed that the decedent died instantaneously, such damages did not exist.
The Nebraska Court of Appeals once stated succinctly that a decedent's survival claim had "nothing to do with the wrongful death statutes."[28] We agree. We accordingly find no reason to apply the wrongful death statute of limitations.
There being no particular statute of limitations set forth for survival actions described in § 25-1401, we conclude that the applicable statute of limitations is the 4-year period set forth in § 25-207. Since the evidence is that Maria filed her survival actions within 4 years, the district court erred in dismissing those claims as barred by the statute of limitations. It did not err, however, in dismissing Maria's wrongful death claims.

MULTI-VEST
Multi-Vest argues that regardless of whether any of Maria's claims are barred by the statute of limitations, the court properly dismissed Multi-Vest as a party defendant because it owed no duty to the decedents. Although this was not the reason stated by the district court, where the record adequately demonstrates that the decision of the trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, an appellate court will affirm.[29]
A prima facie case for summary judgment is shown by producing enough evidence to demonstrate that the movant is entitled to a judgment in its favor if the evidence were uncontroverted at trial.[30] After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at *11 trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion.[31]
In this case, Multi-Vest presented a prima facie case that it had no ownership interest in the Colonial Apartments, or any other duty in relation to the fire that caused the decedents' pain and suffering prior to their deaths. Maria presented no evidence at the summary judgment hearing to rebut this prima facie case and, indeed, does not argue on appeal how Multi-Vest had a duty to the decedents. A legal duty on the part of a defendant to protect the plaintiff from injury is an essential element to an actionable negligence claim.[32] We therefore affirm the district court's dismissal of both causes of action against Multi-Vest.

CONCLUSION
For the foregoing reasons, we affirm the district court's dismissal of defendant Multi-Vest. As to the remaining defendants, we affirm the dismissal of the wrongful death causes of action, but reverse the dismissal of the survival actions.
AFFIRMED IN PART, AND IN PART REVERSED.
NOTES
[1] See Neb.Rev.Stat. § 25-207 (Reissue 2008).
[2] Olsen v. Farm Bureau Ins. Co., 259 Neb. 329, 609 N.W.2d 664 (2000).
[3] Id.
[4] Johnson v. Anderson, 278 Neb. 500, 771 N.W.2d 565 (2009).
[5] Neb. Ct. R. Pldg. § 6-1112(b)(6); Nebraska Coalition for Ed. Equity v. Heineman, 273 Neb. 531, 731 N.W.2d 164 (2007).
[6] See Doe v. Omaha Pub. Sch. Dist., 273 Neb. 79, 727 N.W.2d 447 (2007).
[7] See Ichtertz v. Orthopaedic Specialists of Neb., 273 Neb. 466, 730 N.W.2d 798 (2007). See, also, Doe v. Omaha Pub. Sch. Dist., supra note 6.
[8] See id.
[9] See Neb.Rev.Stat. §§ 30-809 and 30-810 (Reissue 2008).
[10] § 30-810 (emphasis supplied).
[11] See Nelson v. Dolan, 230 Neb. 848, 434 N.W.2d 25 (1989).
[12] See, id.; Hindmarsh v. Sulpho Saline Bath Co., 108 Neb. 168, 187 N.W. 806 (1922).
[13] See Nelson v. Dolan, supra note 11. See, also, Weatherly v. Blue Cross Blue Shield, 2 Neb.App. 669, 513 N.W.2d 347 (1994).
[14] Nelson v. Dolan, supra note 11. See, Wilfong v. Omaha & C.B. Street R. Co., 129 Neb. 600, 262 N.W. 537 (1935); Weatherly v. Blue Cross Blue Shield, supra note 13. See, also, Brandon v. County of Richardson, 252 Neb. 839, 566 N.W.2d 776 (1997); Muller v. Thaut, 230 Neb. 244, 430 N.W.2d 884 (1988).
[15] Wilfong v. Omaha & C.B. Street R. Co., supra note 14.
[16] Neb.Rev.Stat. § 49-101 (Reissue 2008).
[17] Neb. Const. art. I, § 13.
[18] Wilfong v. Omaha & C.B. Street R. Co., supra note 14, 129 Neb. at 609, 262 N.W. at 541.
[19] Id. at 611, 262 N.W. at 542.
[20] Id.
[21] 22 Am.Jur.2d Damages § 429 (2003).
[22] See Wilfong v. Omaha & C.B. Street R. Co., supra note 14 (and cases cited therein).
[23] Wilson v. Bumstead, 12 Neb. 1, 3, 10 N.W. 411, 412 (1881). See, also, Smith v. Columbus Community Hosp., 222 Neb. 776, 387 N.W.2d 490 (1986); Rhein v. Caterpillar Tractor Co., 210 Neb. 321, 314 N.W.2d 19 (1982); Luckey v. Union P.R. Co., 117 Neb. 85, 219 N.W. 802 (1928); Swift v. Sarpy County, 102 Neb. 378, 167 N.W. 458 (1918); Warren v. Englehart, 13 Neb. 283, 13 N.W. 401 (1882).
[24] See, e.g., Nelson v. Dolan, supra note 11; Smith v. Columbus Community Hosp., supra note 23; Wilson v. Bumstead, supra note 23.
[25] § 25-1401.
[26] See Hindmarsh v. Sulpho Saline Bath Co., supra note 12.
[27] Rhein v. Caterpillar Tractor Co., supra note 23.
[28] Weatherly v. Blue Cross Blue Shield, supra note 13, 2 Neb.App. at 672, 513 N.W.2d at 351. See, also, e.g., Peters v. Columbus Steel Castings Co., 115 Ohio St.3d 134, 873 N.E.2d 1258 (2007); Georgia-Pacific v. Benjamin, 394 Md. 59, 904 A.2d 511 (2006); Ratka v. St. Francis Hosp., 44 N.Y.2d 604, 407 N.Y.S.2d 458, 378 N.E.2d 1027 (1978) (superseded by statute as stated in Adelman v. Adelman, 191 Misc.2d 281, 741 N.Y.S.2d 841 (2002)); Blackstone v. Blackstone, 282 Ga.App. 515, 639 S.E.2d 369 (2006); Gibbs v. Magnolia Living Center, Inc., 870 So.2d 1111 (La.App. 2004).
[29] See Harvey v. Nebraska Life & Health Ins. Guar. Assn., 277 Neb. 757, 765 N.W.2d 206 (2009).
[30] Kline v. Farmers Ins. Exch., 277 Neb. 874, 766 N.W.2d 118 (2009).
[31] Id.
[32] See Anderson v. Nashua Corp., 246 Neb. 420, 519 N.W.2d 275 (1994).