IN RE CONSERVATORSHIP OF H. COOPER HANSON III, DECEASED.
MARGARET HANSON, CONSERVATOR, APPELLANT, V.
AMY LOHRBERG PECK ET AL., APPELLEES.
670 N.W.2d 460

Filed October 14, 2003. No. A-02-1241.

Gregory P. Drew for appellant.

Denise E. Frost, of Johnson & Mock, for appellees Amy Lohrberg Peck, John Lohrberg, M.D., and Jonathan Hanson.

James B. Respeliers, of Respeliers & Harmon, P.C., for appellee Great Western Bank.

IRWIN, Chief Judge, and SIEVERS and MOORE, Judges.

SIEVERS, Judge.

Margaret Hanson appeals from the order of the county court for Washington County, Nebraska, which required her to pay $24,800, the amount she had paid herself out of conservatorship funds without court approval, to Great Western Bank, the personal representative of the estate of H. Cooper Hanson III, Margaret's deceased husband.

## FACTUAL BACKGROUND

Margaret married Cooper on May 27, 1995. It was the second marriage for both. From their first marriages, Cooper had a son and daughter, Jonathan Hanson and Jenna Hanson, who lived with his ex-wife, and Margaret had a daughter, Jennifer Beck, who lived with her. Cooper moved into Margaret's home.

In 1995, Cooper underwent medical testing to diagnose a persistent limp. In July 1996, Cooper was diagnosed with amyotrophic lateral sclerosis (also known as ALS or Lou Gehrig's disease).

In August 1996, Jennifer left home for college. On November 27, Cooper's ex-wife unexpectedly died, and Jonathan, age 14, and Jenna, age 8, subsequently moved in with Cooper and Margaret. In February 1997, Cooper and Margaret purchased a different home for themselves, Jonathan, and Jenna, which was handicapped-accessible. The new home was paid for in part by

applying the proceeds from the sale of Margaret's home, in which she and Cooper had previously lived.

Cooper's physical health deteriorated steadily. By November 1997, Cooper had suffered a serious fall, and by January 1998, he had voluntarily quit driving. At the time, both Cooper and Margaret were working in the Omaha area, so Margaret drove Cooper to his job at the Douglas County Bank in Bellevue and then drove to her job at a jewelry store in Omaha. This arrangement continued for about a year. Cooper's condition continued to worsen, and by January 1999, he required a feeding tube.

In March 2000, Cooper resigned from his job because he had undergone a tracheotomy to aid respiration. The tracheotomy required ongoing maintenance which Cooper could not perform. Margaret ceased working at the jewelry store and took a part-time real estate position in Blair. Cooper began receiving in-home nursing care 2 to 3 days per week. After he stopped working because of his physical disability, Cooper became eligible to receive Social Security benefits. In order for Cooper to receive the benefits, however, a conservator had to be appointed for him. On April 19, Margaret was appointed temporary conservator, and the appointment was made permanent on June 22. Cooper died on January 19, 2001.

Prior to their marriage, Cooper and Margaret entered into an agreement according to which Cooper would give Margaret a certain amount of money each month toward household and other expenses. The agreement was never put into writing, and the only people with knowledge of the details of the arrangement were Cooper and Margaret themselves. Nevertheless, the evidence shows that the monthly payments were made during the marriage and up to the time of the conservatorship. In late 1998, Cooper authorized bank transfers of $1,950 per month from his personal account to Margaret's personal account. In January 2000, the transfers increased to approximately $2,500 per month. The increase was apparently due to Cooper's increasing need for care and Margaret's resulting decrease in work hours so that she could stay home and provide such care, which correspondingly decreased her income.

After the conservatorship was established in April 2000, and until Cooper's death in January 2001, Margaret, as conservator,

continued to make payments to herself of approximately $2,500 per month out of conservatorship funds, for which a separate checking account had been established. During this time, she was also paying all of the household expenses, including the mortgage, out of conservatorship funds.

## PROCEDURAL BACKGROUND

After Cooper's death, Margaret petitioned the county court for Washington County for approval of her final accounting, termination of the conservatorship, and her discharge as conservator for Cooper. Objections to the proposed accounting were filed by Great Western Bank, Jonathan individually, and Amy Lohrberg Peck and John Lohrberg, M.D., the guardians of Jenna. After a hearing on the objections, the trial court ordered Margaret to pay $24,800, the amount which she had paid herself from conservatorship funds without prior court approval. The payment was to be made to Great Western Bank. The trial court emphasized that the basis for its order was not any wrongful use of or nefarious purpose for the money on Margaret's part, but simply that court approval had not been secured. Margaret's motion for a new trial was overruled, and Margaret then appealed to this court.

## ASSIGNMENT OF ERROR

Margaret alleges that the trial court erred in "surcharging" her as conservator the sum of $24,800, which she had previously transferred to herself. She does not contest the amount per se, only whether she should be required to make the payment.

## STANDARD OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Mecello*, 262 Neb. 493, 633 N.W.2d 892 (2001). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *In re Guardianship & Conservatorship of Donley*, 262 Neb. 282, 631 N.W.2d 839 (2001).

## ANALYSIS

Neb. Rev. Stat. § 30-2653(c)(20) (Reissue 1995) allows compensation to be paid to the conservator. However, the court, in its letters of appointment, may limit the § 30-2653 powers of a conservator. Neb. Rev. Stat. § 30-2655 (Reissue 1995). The trial court found that Margaret paid herself from conservatorship funds in violation of her letters of conservatorship, which stated that "without prior Order of the Court: You shall not pay yourself or your attorney *compensation* from the assets or income of [Cooper]." (Emphasis supplied.) However, Black's Law Dictionary 277 (7th ed. 1999) defines compensation as "[r]emuneration and other benefits received in return for services rendered; esp., salary or wages." And, the prohibition must be read in context; court approval was also required for compensation of Margaret's attorney. Thus, it is not just any payment, but money for a specific purpose—compensation, meaning in this case payment for services rendered as conservator or attorney—that was prohibited. Obviously, if the court wanted to prohibit all transfer to Margaret of Cooper's funds—regardless of purpose—such a prohibition could have been easily written into the letters of conservatorship. All of the evidence shows that the $2,500 payments were not for services Margaret rendered as conservator, but were merely a continuation of an agreement between husband and wife which Margaret continued effectuating until Cooper's death. Admittedly, Margaret was providing increasing levels of care and working less outside the home, but this was work or services as a wife to her husband, not as a conservator. As conservator, she managed money and made decisions for Cooper, and there is no evidence that the $2,500 per month payments were for these tasks. Thus, we find that the trial court erred in finding that Margaret paid herself " 'compensation' " from conservatorship funds. The only question that remains is whether Margaret's payments to herself from conservatorship funds conformed to the "prudent person" standard of care.

■ Conservators serve as fiduciaries for persons who are unable to manage their own affairs. As fiduciaries, conservators are held to a higher standard of care than they would apply in handling their own property. See *In re Conservatorship of Estate of Martin*, 228 Neb. 103, 421 N.W.2d 463 (1988). Specifically,

they have a duty to exercise the caution of a prudent person dealing with the property of another. See *id*. The evidence shows that Cooper and Margaret's household expenses increased due to a number of factors that were unanticipated at the time of their marriage: First, Jonathan and Jenna came to live with Cooper and Margaret after the untimely death of Cooper's ex-wife. Second, Cooper's diagnosis of ALS led to the need for a handicapped-accessible home. Finally, as Cooper's health deteriorated, his needs for care became extreme. After discussions between Cooper and Margaret regarding Cooper's deteriorating health, his increased need for care, and Margaret's decreasing her work hours to provide such care, Cooper himself had increased the monthly payments to Margaret. The increased payments began before the conservatorship was established. After the conservatorship was established, Margaret continued to effectuate the agreement that Cooper and she had previously made. The evidence indicates that had he been able, Cooper would have continued making these payments to Margaret himself. Therefore, there is no showing that the $2,500 monthly payments violated the prudent person standard.

## CONCLUSION

For the reasons stated above, we find that the trial court erred in ordering Margaret to pay $24,800 to Great Western Bank, and we reverse the trial court's order to that extent and effect.

The trial court ordered Margaret to remit any remaining balance that was being held as conservatorship proceeds to Great Western Bank. We affirm this part of the order.

We note that the trial court, as far as we read the order, did not discharge Margaret as conservator and did not terminate the conservatorship. We remand the cause so that a discharge and termination of conservatorship may be granted.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.