IN RE CONSERVATORSHIP OF H. COOPER HANSON III, DECEASED. MARGARET HANSON, CONSERVATOR, APPELLANT, V. AMY LOHRBERG PECK ET AL., APPELLEES.

682 N.W.2d 207

Filed June 25, 2004.   No. S-02-1241.

Gregory P. Drew for appellant.

Denise E. Frost, of Johnson & Mock, for appellees Amy Lohrberg Peck, John Lohrberg, and Jonathan Hanson.

James B. Respeliers, of Respeliers & Harmon, P.C., for appellee Great Western Bank.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This court has promulgated a general rule applicable to all county courts which requires letters of conservatorship to include the following language: " 'You shall not pay yourself or your attorney compensation from the assets or income of your ward . . . without first obtaining an order therefor . . . .' " Neb. Ct. R. of Cty. Cts. 43 (rev. 2000). Language to this effect was included in letters of conservatorship issued to Margaret Hanson when she was appointed conservator for the estate of her husband, H. Cooper Hanson III (Cooper), in April 2000.

From the date of her appointment until Cooper's death on January 19, 2001, Margaret transferred funds from Cooper's accounts to her personal account pursuant to an oral agreement with Cooper which antedated her appointment as conservator. These transfers were made without court approval. Objections

were filed by the guardians for Cooper's minor child and individually by Cooper's adult child (appellees). The personal representative of Cooper's estate also filed an objection. In response, the Washington County Court held that these payments were made in violation of the restriction imposed by the letters of conservatorship and ordered Margaret to pay $24,800 to the personal representative of Cooper's estate as reimbursement for the unauthorized payments to herself. Margaret appealed, and the Nebraska Court of Appeals reversed, based upon its determination that the challenged payments did not constitute "compensation" and did not violate the prudent person standard. *In re Conservatorship of Hanson*, 12 Neb. App. 202, 670 N.W.2d 460 (2003). We granted the appellees' petition for further review.

## FACTS

Cooper and Margaret were married in 1995. It was the second marriage for both. Cooper's two children from his previous marriage, both minors at the time, were living with his former spouse. Margaret's daughter lived with her and Cooper in a house owned by Margaret.

In the fall of 1995, Cooper began having health problems which led to a diagnosis of amyotrophic lateral sclerosis, also known as ALS or Lou Gehrig's disease, in July 1996. In August of that year, Margaret's daughter left for college. In November, Cooper's former spouse died unexpectedly and his two minor children came to live with him and Margaret. Cooper's health worsened, and by March 2000, he was confined to his home.

Margaret was appointed temporary conservator of Cooper's estate on April 19, 2000, and conservator on June 22. The conservatorship was created in order to facilitate the receipt of Social Security benefits for which Cooper had become eligible. The letters of conservatorship issued to Margaret provided: "You shall not pay yourself or your attorney compensation from the assets or income of the Protected Person . . ." without prior order of the court.

Prior to their marriage, Margaret and Cooper entered into an oral agreement whereby Cooper would give Margaret money each month as reimbursement for the added expense of his living in her house. From the time of this agreement until January 2000,

Cooper transferred $1,950 per month to Margaret. After that date, the amount increased to approximately $2,500. As conservator of Cooper's estate, Margaret continued to have these funds transferred directly into her personal account each month. She did not seek or obtain court approval for the transfers.

After Cooper's death, Margaret petitioned for approval of her final accounting, termination of the conservatorship, and discharge as conservator. Objections were filed to the proposed accounting by the personal representative and the appellees. At the hearing on the objections, Margaret initially testified that the monthly payments she made to herself were reimbursement for the added expense of Cooper's living in the house. On cross-examination, however, Margaret testified that during the conservatorship, she and Cooper agreed that in addition to making the mortgage and utility payments, he would continue to pay her a monthly allowance to make up for her lost income. Margaret testified that the transfers were not payment for the care she gave Cooper.

## ASSIGNMENTS OF ERROR

The appellees assign, restated and consolidated, that the Court of Appeals erred in (1) reversing the judgment of the county court ordering Margaret to reimburse the conservatorship $24,800, (2) applying an unduly narrow definition of the word "compensation," and (3) misapplying the standard of review applicable to appeals in probate matters by reweighing the evidence instead of deferring to the factual findings of the probate court.

## STANDARD OF REVIEW

In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. *In re Estate of Krumwiede*, 264 Neb. 378, 647 N.W.2d 625 (2002). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *City of York v. York Cty. Bd. of Equal.*, 266 Neb. 297, 664 N.W.2d 445 (2003). When reviewing questions of law,

an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 675 N.W.2d 642 (2004).

## ANALYSIS

The issue presented in this appeal is whether the payments which Margaret made to herself from Cooper's funds while serving as conservator constituted "compensation" as that term is used in the letters of conservatorship. The Court of Appeals adopted a narrow definition of this term, holding that "it is not just any payment, but money for a specific purpose—compensation, meaning in this case payment for services rendered as conservator or attorney—that was prohibited." *In re Conservatorship of Hanson*, 12 Neb. App. 202, 206, 670 N.W.2d 460, 463-64 (2003). The court concluded that the payments in question "were not for services Margaret rendered as conservator, but were merely a continuation of an agreement between husband and wife which Margaret continued effectuating until Cooper's death." *Id.* at 206, 670 N.W.2d at 464.

Informal financial arrangements between married persons are generally not subjected to judicial scrutiny. However, when a court appoints one spouse to serve as the conservator of the estate of the other, a new legal relationship is formed in which the conservator assumes obligations for which he or she is accountable to the court as well as to the protected spouse. In such protective proceedings, the appointment of a conservator is based upon a judicial determination that it is necessary to protect the property of one who is unable to manage his or her property and affairs effectively for various reasons, including "physical illness or disability," and that such person

> has property which will be wasted or dissipated unless proper management is provided, or that funds are needed for the support, care, and welfare of the person or those entitled to be supported by him or her and that protection is necessary or desirable to obtain or provide funds.

Neb. Rev. Stat. § 30-2630(2) (Reissue 1995). When an individual is in need of physical or financial protection, the law must in many instances think and act for him or her. *In re Guardianship*

*& Conservatorship of Donley,* 262 Neb. 282, 631 N.W.2d 839 (2001). Statutory protective proceedings, such as conservatorships, are the means by which that task is accomplished.

The appointment of a conservator vests "title as trustee to all property of the protected person" in the conservator. Neb. Rev. Stat. § 30-2649 (Reissue 1995). "In the exercise of his or her powers, a conservator is to act as a fiduciary . . . ." Neb. Rev. Stat. § 30-2646 (Cum. Supp. 2002). Every conservator "must account to the court for his [or her] administration of the trust" upon resignation or removal. Neb. Rev. Stat. § 30-2648 (Reissue 1995).

Because a conservator holds property in trust, any transaction on behalf of the protected person which inures to the financial benefit of the conservator is especially subject to judicial oversight. Generally, such transactions are regarded with distrust by the courts.

> Since the relation is so intimate, the dependence so complete, and the influence so great, any transaction between the two parties or by the [conservator] alone through which the [conservator] obtains a benefit, entered into while the relation exists, is, in the highest sense, suspicious and presumptively fraudulent.

39 Am. Jur. 2d *Guardian and Ward* § 254 at 181 (1999).

Thus, a transfer of funds or other assets from one spouse to another has a legal significance transcending the marital relationship when it is carried out by the transferee as the conservator for the estate of the transferor. In light of these considerations, we conclude that the Court of Appeals adopted an unduly narrow definition of the word "compensation" in the context of letters of conservatorship and county court rule 43 by restricting it to "payment for services rendered as conservator." See *In re Conservatorship of Hanson,* 12 Neb. App. at 206, 670 N.W.2d at 464. Given the risk of harm attendant to self-dealing by a fiduciary, we conclude that compensation in this context should include any form of payment or remuneration made to the conservator from assets of the protected person. This broader definition may well include many transactions which are perfectly legitimate and consistent with the conservator's fiduciary obligation; however, subjecting all such transactions to the filter of prior judicial approval affords a measure of protection against

those which are not. So construed, rule 43 embodies the concept that self-dealing by a conservator may be permissible, but only after a judicial finding that there is an adequate reason for the transaction. See *In re Guardianship of Jordan*, 616 N.W.2d 553 (Iowa 2000).

We therefore examine the record to determine whether the judgment of the county court conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. In her petition for approval of her final account, Margaret alleged that "[b]y agreement between Petitioner and the ward, entered into approximately January 1, 1999, Petitioner was to be compensated an amount for the care of the ward . . . ." At the hearing, however, Margaret testified that the transfers which she made to herself pursuant to this agreement were not in payment for care she gave to Cooper, but, rather, "[t]o make up for my lost income." Regardless of which of these statements we rely upon, by Margaret's own admission, the payments were a form of compensation.

Margaret argues that the monetary transfers to her personal bank account were not compensation but were "family financial management in the family's accustomed manner." Brief for appellant at 11. She further contends that "[t]he record is clear that all pooled funds were spent on persons legally dependent on the protected person or members of the protected person's household who are unable to support themselves and who were in need of support." Brief for appellant at 12. Based on our determination, however, that in this context compensation includes any form of payment, the purpose of the transfers is irrelevant.

We conclude that the county court's findings are supported by competent evidence, and are neither arbitrary, capricious, nor unreasonable. *City of York v. York Cty. Bd. of Equal.*, 266 Neb. 297, 664 N.W.2d 445 (2003). We note, as did the county court, that the events which are the subject of this action occurred during a period of tremendous stress and anxiety occasioned by Cooper's illness and that there is no indication in the record that Margaret acted out of any sinister motive. However, the record does clearly establish that in contravention of her letters of conservatorship, Margaret paid compensation to herself from the assets of the protected person without prior approval of the

court. This limitation upon the powers of the conservator was required under a rule promulgated by this court which we are obligated to enforce uniformly. Accordingly, we conclude that the county court did not err in requiring Margaret to pay the personal representative of Cooper's estate $24,800.

## CONCLUSION

On further review, we conclude that the Court of Appeals erred in reversing the judgment of the county court. We therefore reverse the judgment of the Court of Appeals and remand the cause to that court with directions to affirm the judgment of the Washington County Court.

REVERSED AND REMANDED WITH DIRECTIONS.

HENDRY, C.J., not participating.