IN RE ESTATE OF ELLEN M. PANEC, DECEASED.
REBECCA GRIFFIN, APPELLANT, V. WILLIAM J. PANEC,
PERSONAL REPRESENTATIVE OF THE ESTATE OF
ELLEN M. PANEC, DECEASED, APPELLEE.

___ N.W.2d ___

Filed November 4, 2014.    No. A-13-777.

1. **Decedents' Estates: Appeal and Error.** In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. ____: ____. When reviewing questions of law, an appellate court has an obligation to review the questions independently of the conclusion reached by the trial court.
4. **Actions: Decedents' Estates: Abatement, Survival, and Revival: Wrongful Death.** In Nebraska, there are two types of causes of action which vest in and can be brought only by the personal representative of a decedent's estate—a survival action and a wrongful death action.
5. **Actions: Decedents' Estates: Abatement, Survival, and Revival: Words and Phrases.** Nebraska's statutory provisions allow a cause of action, referred to as a "survival action," held by a person who is fatally injured to be prosecuted by the personal representative of the decedent.
6. **Actions: Decedents' Estates: Abatement, Survival, and Revival.** A survival action is not a new cause of action but is a continuation in the deceased's personal representative of the cause of action which accrued to the deceased under the common law.
7. **Wrongful Death: Damages.** Wrongful death recovery is limited to the loss suffered by a decedent's next of kin, and it provides no basis upon which to recover a decedent's own damages.

Appeal from the County Court for Jefferson County: STEVEN B. TIMM, Judge. Affirmed.

Eric B. Brown, of Atwood, Holsten, Brown & Deaver Law Firm, P.C., L.L.O., for appellant.

Vincent M. Powers and Elizabeth Govaerts, of Vincent M. Powers & Associates, for appellee.

MOORE, Chief Judge, and IRWIN and PIRTLE, Judges.

Pirtle, Judge.

## INTRODUCTION

Rebecca Griffin (Rebecca) appeals from the August 7, 2013, order of the county court for Jefferson County, distributing settlement proceeds of $616,000 between herself and William J. Panec, the surviving spouse, personal representative, and appellee herein. For the reasons that follow, we affirm.

## BACKGROUND

Ellen M. Panec and her husband, William, were involved in a serious automobile collision in Lincoln, Nebraska, on September 19, 2011. Both sustained injuries, and Ellen was hospitalized for $5\frac{4}{7}$ weeks following the collision before she passed away. William eventually recovered from his injuries. The parties stipulated that the medical expenses incurred for the care of Ellen after the collision were fair and reasonably necessary. The total cost for her medical care was approximately $215,000. The parties further stipulated that Ellen's injuries ultimately caused her death on October 28 and that the reasonable funeral and burial costs were $21,341.84.

Prior to Ellen's death, on October 3, 2011, a lawsuit was filed in the district court for Lancaster County on Ellen's behalf for claims arising from Ellen's personal injuries resulting from the collision. A companion complaint was also filed in the district court for Lancaster County on William's behalf for the injuries he suffered as a result of the same collision.

On August 22, 2012, an amended complaint was filed in the district court for Lancaster County on behalf of Ellen's estate. This amended complaint alleged that Ellen's injuries were fatal, but that prior to her death, she had required hospitalization, and that she had "suffered pain, suffering, inconvenience, disability and incurred healthcare expenses."

Prior to the collision, Ellen had been diagnosed with "stage 4" lung cancer, as well as brain cancer and esophageal cancer. At the time of the collision, Ellen was 68 years old and she and William had been married for almost 7 years. It was a second marriage for both Ellen and William. Ellen had one daughter, Rebecca, from her prior marriage. Ellen was not working at

the time of the collision and had retired from employment years earlier.

The parties further stipulated that between Ellen, William, and Rebecca, it was likely that Ellen had the shortest life expectancy at the time of the collision. The parties also stipulated that Ellen was of sound mind when she executed her last will and testament, as well as a postnuptial agreement with William, both dated November 12, 2010. The parties further stipulated that the documents accurately reflected Ellen's wishes.

The will generally gave William all of Ellen's household goods and furniture and any vehicles she might own. It gave him a life estate in certain real estate. The will further provided, "All of the rest, residue and remainder of my property of every nature and kind and wheresoever situated I give and devise to my daughter, [Rebecca]."

Ellen's estate was opened on November 10, 2011. The parties stipulated that several documents would be received into evidence without objection. These documents included Ellen's will, the postnuptial agreement, probate documents, pleadings from the district court actions related to the collision, medical bills, and correspondence with legal counsel. The parties stipulated to the value of Ellen's medical bills and liens, as well as the value of the settlements with the tort-feasor and the Panecs' insurance company. The parties stipulated that the settlement with the tort-feasor responsible for the cause of the automobile accident was valued at $100,000. The parties also stipulated that a settlement was reached with the Panecs' insurance company for $516,000 for underinsured motorist coverage.

The county court considered the parties' stipulations and the testimony of William, as Ellen's husband and personal representative, and Rebecca. The court found that William suffered the greatest loss, as compared to Ellen's adult daughter, Rebecca. The court ordered the settlement funds to be distributed as follows:

> 1. Reasonable attorney fees to [William's attorney] in the sum of $154,000.00.

2. A Medicare lien in the sum of $6,415.20.

3. A Madonna Rehabilitation lien in the sum of $11,101.51.

4. Promed Services lien in the sum of $5,738.75.

5. $63,873.45 to Rebecca . . . (10% + $20,000.00; as suggested in [William's] reply brief).

6. Balance of proceeds to William . . . .

## ASSIGNMENTS OF ERROR

Rebecca asserts the county court erred in (1) holding it did not have jurisdiction to allocate the damages other than as provided by Neb. Rev. Stat. § 30-810 (Reissue 2008), (2) failing to allocate any of the approximately $616,000 settlement to Ellen's estate for its personal injury survivor claim, and (3) determining the medical bills were not relevant to any personal injury claim.

## STANDARD OF REVIEW

[1-3] In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. *In re Conservatorship of Hanson*, 268 Neb. 200, 682 N.W.2d 207 (2004). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. When reviewing questions of law, an appellate court has an obligation to review the questions independently of the conclusion reached by the trial court. *Id*.

## ANALYSIS

*Distribution of Settlement Under*
*Nebraska Revised Statutes*.

In the "Amended Petition for Distribution of Settlement," William, as personal representative, requested that the court enter an order approving a distribution allotting $20,000 to Ellen's estate. Rebecca would be entitled to those funds as Ellen devised "all of the rest, residue and remainder" of her property of every nature to Rebecca, with the exception of

the personal property awarded to William and his life estate in the residence he shared with Ellen. The "Amended Petition for Approval of Settlement" stated that the Panecs' insurance company "has offered the sum of $515,000.00 to settle said Claim. $495,000.00 for wrongful death and $20,000.00 for the pain and suffering from September 19, 2011 to [Ellen's] death on October 28, 2011."

In its order, issued August 7, 2013, the county court for Jefferson County determined how the settlement proceeds would be divided. The court found it did not have jurisdiction to allocate the damages between William and Rebecca, other than as provided by § 30-810.

Applying § 30-810, the court found that after payment of reasonable attorney fees and a negotiated reduction in medical bills, the funds should be split by allocating $63,873.45 to Rebecca and the remainder to William. The court determined that Rebecca was entitled to 10 percent of the settlement plus the $20,000 allocated by the Panecs' insurance company for Ellen's predeath pain and suffering. The court then awarded the balance of the proceeds to William. The court reasoned that as Ellen's husband, William suffered a greater pecuniary loss of counsel and companionship than Ellen's adult daughter, Rebecca. Rebecca asserted at the hearing that she should receive a greater portion of the wrongful death settlement, because her loss was greater. Though the court's reasoning is supported by the evidence, Rebecca did not raise this issue on appeal.

Instead, Rebecca asserts the county court erred in "failing to allocate and distribute any of the $615,000 [sic] settlement recovery to the Estate for its Neb. Rev. Stat. § 25-1401 personal injury survivor claim." Brief for appellant at 12. Thus, she asserts the court erred in determining that it could not distribute the settlement funds according to Neb. Rev. Stat. § 25-1401 (Reissue 2008). Section 25-1401 recognizes that a decedent's predeath pain and suffering survive death as a separate cause of action which is a claim that inures to the benefit of the estate. See *Corona de Camargo v. Schon*, 278 Neb. 1045, 776 N.W.2d 1 (2009). Rebecca cites *Reiser v. Coburn*, 255 Neb. 655, 587 N.W.2d 336 (1998), in support of her

argument that damages should have been recovered on behalf of Ellen's estate for Ellen's predeath damages.

[4-6] In Nebraska, there are two types of causes of action which vest in and can be brought only by the personal representative of a decedent's estate—a survival action and a wrongful death action. *In re Diers*, 320 B.R. 166 (D. Neb. 2004). See, also, §§ 25-1401 and 30-810; Neb. Rev. Stat. §§ 25-322 and 30-809 (Reissue 2008). The statutory provisions allow a cause of action, referred to as a "'survival action,'" held by a person who is fatally injured to be prosecuted by the personal representative of the decedent. *In re Diers*, 320 B.R. at 168. A survival action is not a new cause of action but is a continuation in the deceased's personal representative of the cause of action which accrued to the deceased under the common law. *Id*. The purpose of the survival action is to recover the loss to the decedent's estate resulting from the tort. *Id*.

[7] In contrast, §§ 30-809 and 30-810 provide a "wrongful death" cause of action, not to the decedent and the decedent's estate but to the personal representative of the decedent for the exclusive benefit of the widow or widower and next of kin. Wrongful death recovery is limited to the loss suffered by a decedent's next of kin, and it provides no basis upon which to recover a decedent's own damages. *Corona de Camargo v. Schon, supra*. The losses arising from the decedent's death include loss of future income and maintenance, and for present and future loss of society and companionship. § 30-809; *Miers v. Central Mine Equipment Co*., 604 F. Supp. 502 (D. Neb. 1985).

In this case, William, the personal representative of Ellen's estate, negotiated a settlement with the sole purpose of maximizing the net recovery for those benefiting from the settlement, without regard for each potential individual element of damages that might or might not be before a jury if the case were tried.

The county court found that once the funds were received, it was obligated to apply § 30-810, because a jury's potential estimation of damages was merely hypothetical. The court noted that the complaint did not set forth separate causes

of action for predeath and postdeath damages, but simply requested a judgment "'in an amount which will fairly and justly compensate [Ellen] for [her] injuries under the laws of the State of Nebraska.'"

Rebecca requested that the funds be distributed other than as provided by § 30-810, but did not provide any authority to support such a disposition. The request was based upon the case's hypothetically being tried before a jury as a common-law tort action, rather than as a probate matter. In this scenario, the jury would have to find that damages were owed and would have to separately determine the amount which would be allocated to Ellen's estate and the amount which would be due to Ellen's widower and next of kin. However, this case was not before a jury, and the amount of the settlement was determined prior to the issue's being presented to the county court. Thus, the county court was simply tasked with distributing the settlement proceeds. The court acknowledged that it seemed likely that the estate would have prevailed had the matter gone to trial, but stated that it was less certain that the jury's estimate of damages would have equaled the amount of the generous settlement.

*Reiser v. Coburn*, 255 Neb. 655, 587 N.W.2d 336 (1998), and its progeny recognize that two causes of action may be joined: one for wrongful death and one for predeath pain and suffering and medical and funeral expenses. Though the court applied § 30-810, it is clear from our review of the record that the causes of action were joined. The order provided for wrongful death and medical expenses, and an additional $20,000 distribution to Rebecca, beyond the 10 percent the court allotted for the wrongful death claim. Though the words "pain and suffering" are not explicitly used, $20,000 was the amount suggested by William and the amount the Panecs' insurance company allotted for the pain and suffering portion of the $616,000 settlement.

After reviewing the county court's decision, we find the court's distribution of the proceeds from the settlement conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

*Medical Bills.*

Rebecca asserts the county court erred in "analyzing that the $215,000 in medical bills were implicitly not relevant to any personal injury claim because they were paid by insurance or written off and that both parties would be responsible for the medical bills." She argues that the Nebraska statutes provide that the measure of damages for medical expenses in personal injury claims shall be the private party rate, not the discounted amount, citing Neb. Rev. Stat. § 52-401 (Reissue 2010).

In its order, the county court noted that the estate would be liable for medical expenses pursuant to Neb. Rev. Stat. § 30-2486 (Reissue 2008) and that William would also be obligated because spouses are jointly responsible for medical expenses. See *Choat v. Choat*, 218 Neb. 875, 359 N.W.2d 810 (1984). The court's order did not deduct the outstanding medical expenses from either party's share of the settlement, nor add to either party's share of the settlement for the cost of medical expenses already paid from the settlement proceeds. Essentially, the court found that both parties would be responsible for the outstanding balances, but that there was no need to split the expenses or assign them as damages, because they were already accounted for. Therefore, the court did not include a provision entitling either party to medical expenses.

Rebecca asserts on appeal she is entitled to the retail value of Ellen's medical bills. She cites the "'collateral source rule,'" which allows a party who has been wholly or partially indemnified for a loss by insurance to recover for the full amount of damages. Brief for appellant at 16, citing *Mahoney v. Nebraska Methodist Hosp.*, 251 Neb. 841, 560 N.W.2d 451 (1997). While this rule would have certainly factored into the presentation of the claim on its merits to a jury, the argument has no bearing on this particular distribution. This action was not aimed at proving the cost of medical expenses as damages; rather, it was for the distribution of settlement funds. The parties had already recovered the maximum value of the insurance proceeds, and the parties stipulated to the cost of medical services already paid and to the remaining amounts owed. The parties also stipulated that the majority of the bills

had already been paid to the appropriate providers and that the remaining balances were to be paid directly to the medical providers and to Medicare as subrogor. We find Rebecca's assignment of error with regard to her entitlement for medical expenses is without merit.

## CONCLUSION

We find the county court did not err in finding it had jurisdiction to distribute the settlement proceeds only according to § 30-810 and in allocating the settlement proceeds accordingly. We also find the county court did not err in finding the parties were not entitled to recover the value of medical expenses incurred for Ellen's care and paid directly to the medical providers out of the settlement proceeds.

Affirmed.

———————

State of Nebraska, appellee, v.
Elijah D. Watts, appellant.
___ N.W.2d ___

Filed November 4, 2014.    Nos. A-13-1105, A-13-1136.

1. **Statutes: Appeal and Error.** Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the trial court.
2. **Rules of the Supreme Court: Appeal and Error.** Interpretation of a court rule is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the trial court.
3. **Prior Convictions: Sentences.** To constitute a basis for enhancement of punishment on a charge of a second or subsequent offense, the prior conviction relied upon for enhancement must be a final conviction.
4. **Prior Convictions: Sentences: Appeal and Error.** A prior conviction that is pending on appeal will not support enhanced penalties because it has not yet become final and may be reversed by the appellate court.
5. **Sentences: Prior Convictions: Drunk Driving: Time.** The finality of a prior driving under the influence conviction offered for purposes of enhancement is determined as of the date the subsequent offense was committed.

Appeal in No. A-13-1105 from the District Court for Lancaster County, Paul D. Merritt, Jr., Judge, on appeal