In re Estate of Ellen M. Panec, deceased.
Rebecca Griffin, appellant, v. William J. Panec,
Personal Representative of the Estate of
Ellen M. Panec, deceased, appellee.

___ N.W.2d ___

Filed June 12, 2015.    No. S-13-777.

1. **Decedents' Estates: Appeal and Error.** In the absence of an equity
   question, an appellate court, reviewing probate matters, examines for
   error appearing on the record made in the county court.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors
   appearing on the record, an appellate court's inquiry is whether the deci-
   sion conforms to the law, is supported by competent evidence, and is
   neither arbitrary, capricious, nor unreasonable.
3. ____: ____. When reviewing questions of law, an appellate court has
   an obligation to resolve the questions independently of the conclusion
   reached by the trial court.
4. **Abatement, Survival, and Revival: Wrongful Death.** A wrong-
   ful death action and a survival action are two distinct causes of
   action which may be brought by a decedent's personal representative.
   Although they are frequently joined in a single action, they are concep-
   tually separate.
5. **Wrongful Death: Damages.** A wrongful death action is brought on
   behalf of the widow or widower and next of kin for damages they have
   sustained as a result of the decedent's death. Such damages include the
   pecuniary value of the loss of the decedent's support, society, comfort,
   and companionship.
6. **Abatement, Survival, and Revival: Decedents' Estates.** An action
   under the survival statute, Neb. Rev. Stat. § 25-1401 (Reissue 2008), is
   the continuance of the decedent's own right of action which he or she
   possessed prior to his or her death. The survival action is brought on
   behalf of the decedent's estate and encompasses the decedent's claim
   for predeath pain and suffering, medical expenses, funeral and burial

expenses, and any loss of earnings sustained by the decedent, from the time of the injury up until his or her death.

7. **Evidence: Records: Appeal and Error.** A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered.

Petition for further review from the Court of Appeals, Moore, Chief Judge, and Irwin and Pirtle, Judges, on appeal thereto from the County Court for Jefferson County, Steven B. Timm, Judge. Judgment of Court of Appeals reversed, and cause remanded with directions.

Eric B. Brown, of Atwood, Holsten, Brown & Deaver Law Firm, P.C., L.L.O., for appellant.

Vincent M. Powers and Elizabeth A. Govaerts, of Vincent M. Powers & Associates, for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

The county court ordered distribution of settlement proceeds in the estate of Ellen M. Panec. Although the proceeds flowed from both a survival claim and a wrongful death claim, the court applied a wrongful death statute[1] to govern all distributions. The Nebraska Court of Appeals affirmed. We granted further review to clarify the separate legal concepts governing the respective distributions. The county court should have allocated part of the proceeds to the survival claim and ordered distribution of those proceeds as part of Ellen's probate estate. Although the Court of Appeals determined that $20,000 was allocated to the survival claim, the evidence did not support this conclusion. We therefore reverse, and remand with directions.

---

[1] Neb. Rev. Stat. § 30-810 (Reissue 2008).

## BACKGROUND

In September 2011, Ellen and her second husband, William J. Panec, were injured in a motor vehicle accident. Both Ellen and William sustained injuries. William ultimately recovered, but Ellen passed away from her injuries after being hospitalized for nearly 6 weeks. At the time of the accident, Ellen was 68 years old. She had retired from her employment some years earlier. She had also been diagnosed with three types of cancer, including "stage 4" lung cancer, brain cancer, and esophageal cancer.

An informal probate of Ellen's will was initiated in the county court. Pursuant to Ellen's will, William was appointed the personal representative of her estate. However, the majority of Ellen's estate passed to her daughter from her first marriage, Rebecca Griffin, as the remainder beneficiary. William received only the household goods and furniture, any vehicles Ellen had owned, and a life estate in certain real estate. Further, William had previously waived any statutory rights in Ellen's estate via a postnuptial agreement.

Prior to Ellen's death, a lawsuit was filed in the district court for Lancaster County against the driver of the other vehicle. Upon Ellen's death, William filed an amended complaint alleging that Ellen had succumbed to her injuries. The complaint asserted that Ellen had sustained fatal injuries, incurred medical expenses, and experienced pain, suffering, inconvenience, and disability. As relief, it sought "judgment against the [driver] in an amount which will fairly and justly compensate [Ellen] for her injuries under the laws of the State of Nebraska."

In order to settle the claim, the driver's liability insurer offered to pay the limits of the policy in the amount of $100,000. William filed a petition for approval of the settlement in the county court. He requested that the court approve the settlement, because the driver was without sufficient assets to pursue. Although the court ultimately approved the settlement, William later requested that the approval

be vacated due to the failure to provide proper notice to all parties.

William also made a claim against his and Ellen's underinsurance carrier. And he filed a subsequent petition for approval of a settlement offer. In the petition, he alleged that the carrier had offered $515,000 to settle two claims: "$495,000.00 for wrongful death and $20,000.00 for the pain and suffering" that Ellen had experienced prior to her death.

The county court conducted a hearing on the two settlement offers—$100,000 from the driver's liability insurer and $516,000 from the underinsurance carrier (although William had previously alleged that the underinsurance carrier had offered $515,000, both the court and the parties treated the offer as $516,000). William and Griffin entered into a stipulation that both of the settlements were fair and reasonable. And they further stipulated to the payment of attorney fees and several medical liens that had been placed on the settlement proceeds. They also agreed that Ellen had incurred medical expenses of $214,754.77 from the accident.

William testified as to his and Ellen's marriage. William described his "married life" as "[v]ery good" and confirmed that he and Ellen had a loving relationship. He testified that he and Ellen had traveled together and that Ellen had assisted with office work in his law practice.

As to Ellen's injuries, William testified that she suffered a "ruptured . . . aorta in her stomach" and eventually developed an infection from surgery. She was ultimately admitted to a rehabilitation hospital. William described that Ellen "wasn't quite so bad" upon her admission, but "the longer she was there . . . she would tire and was on medication to alleviate her pain." However, William indicated that she was "[p]retty much" cognizant of where she was. Ellen survived for 5 weeks and 4 days until she ultimately passed away at the rehabilitation hospital.

Griffin described that Ellen had been "crushed head to foot" from the accident. According to Griffin, Ellen sustained 17

broken ribs, a lacerated spleen, a broken lumbar vertebra, a broken "coccygeal tailbone," and a compromised "hiatal hernia stomach wrap." Ellen also required a 12- to 14-inch incision, which eventually became infected. Griffin testified that Ellen experienced high levels of pain. She described that Ellen was in "sheer agony" and that Ellen would cry, moan, and "constantly" request more medication.

Griffin also testified as to her relationship with Ellen. Griffin expressed that Ellen was her "best friend" and that they had remained close since Griffin was a child. However, as to her pecuniary interests, Griffin confirmed that she had not been receiving any pecuniary benefits from Ellen prior to her death. She was not expecting any financial support from Ellen, and Ellen did not send her money on a regular basis. Griffin testified that she was married to an engineer, and she confirmed that her husband was able to support their family.

At the conclusion of the evidence, Griffin's counsel argued that the settlement proceeds should be allocated between the potential wrongful death and survival claims arising from Ellen's death. He asked the county court to "decide how much is related to [the] personal injury claim [and] decide how much is related to wrongful death." And he further asserted that Ellen's medical bills and funeral and burial expenses should be reflected in the estate's portion of the proceeds.

After the hearing, the county court entered an order approving the settlements and distributing the $616,000 of settlement proceeds. But in its order, the court explained that it did not believe it had the authority to distribute the proceeds other than as provided by § 30-810, governing wrongful death actions. That statute provides that the "avails" of a wrongful death action shall be paid to the "widow or widower and next of kin in the proportion that the pecuniary loss suffered by each bears to the total pecuniary loss suffered by all such

persons."[2] The court expressed that it recognized the distinction between the damages, i.e., Ellen's pain and suffering, and the loss to the widower and next of kin, but it concluded that all of the proceeds were required to be distributed pursuant to § 30-810.

As to each party's pecuniary loss, the county court concluded that William's pecuniary loss was "substantially greater" than Griffin's. The court observed that Ellen had assisted William in his law practice and that a presumption of pecuniary loss existed in his favor, as Ellen's spouse. Further, Griffin had admitted that she was not receiving financial support from Ellen.

Based upon its analysis of the parties' pecuniary loss, the county court ordered that the vast majority of the $616,000 of settlement proceeds be distributed to William. After the payment of the stipulated attorney fees and medical liens, Griffin received $63,873.45 and William received the remainder. In making the distribution to Griffin, the court explained only that her portion represented "10% + $20,000.00; as suggested in [William's] reply brief." And in making the distribution, the court did not consider the value of the medical expenses that Ellen had incurred. The court observed that the majority of the medical bills had been paid by insurance or "written off" and that both William and the estate would have been liable for their payment.

Griffin filed a timely notice of appeal, and the case was assigned to the docket of the Court of Appeals. On appeal, Griffin challenged (1) the county court's determination that it lacked authority to deviate from § 30-810 in distributing the settlement proceeds, (2) the county court's failure to allocate any of the proceeds to the survival claim, and (3) the county court's failure to consider the value of Ellen's medical expenses.

---

[2] *Id.*

The Court of Appeals rejected Griffin's premise that the county court had failed to make an allocation of the proceeds to the survival claim. Relying upon William's assertions in his petition for approval of settlement, the Court of Appeals determined that

> it is clear from our review of the record that the causes of action were joined. The [county court's] order provided for wrongful death and medical expenses, and an additional $20,000 distribution to [Griffin], beyond the 10 percent the court allotted for the wrongful death claim. Though the words "pain and suffering" are not explicitly used, $20,000 was the amount suggested by William and the amount the Panecs' insurance company allotted for the pain and suffering portion of the $616,000 settlement.[3]

As to Ellen's medical expenses, the Court of Appeals agreed with the county court that the retail value of Ellen's medical expenses was irrelevant. The Court of Appeals observed that Griffin's argument apparently relied upon the collateral source rule. Under that rule, a plaintiff's right to recover from a wrongdoer is not reduced by benefits received from insurance or other sources.[4] But the Court of Appeals concluded that the rule did not apply, because there was no need to prove the extent of Ellen's medical expenses as damages. The amount of recovery had already been established, and the parties had stipulated to the cost of the medical services paid and to the remaining amounts owed. The only issue to be determined was the distribution of the proceeds.

And based upon its review of the record, the Court of Appeals determined that the county court's distribution conformed to the law, was supported by competent evidence,

---

[3] *In re Estate of Panec*, 22 Neb. App. 497, 503, 856 N.W.2d 331, 337 (2014).

[4] See *Strasburg v. Union Pacific RR. Co.*, 286 Neb. 743, 839 N.W.2d 273 (2013).

and was neither arbitrary, capricious, nor unreasonable. Griffin timely petitioned for further review, and we granted her petition.

## ASSIGNMENTS OF ERROR

Griffin assigns, restated, that the Court of Appeals erred in (1) characterizing the $20,000 she received as a distribution for the survival claim; (2) determining that the county court's distribution of the settlement proceeds conformed to the law, was supported by competent evidence, and was neither arbitrary, capricious, nor unreasonable; (3) finding that the collateral source rule was irrelevant; and (4) rejecting her claim that she was entitled to the retail value of Ellen's medical expenses.

## STANDARD OF REVIEW

[1-3] In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court.[5] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[6] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[7]

## ANALYSIS

Each of Griffin's assignments of error ultimately addresses the county court's distribution of the settlement proceeds. Her claims involve multiple levels of error. To start, she contends that the county court erroneously distributed all of the proceeds pursuant to § 30-810, as if the proceeds solely

---

[5] *In re Conservatorship of Hanson*, 268 Neb. 200, 682 N.W.2d 207 (2004).

[6] *Id.*

[7] *Id.*

represented a wrongful death claim. She argues that the proceeds arose from the settlement of both the wrongful death and survival claims and that the court should have allocated the proceeds between the two claims.

Next, she asserts that the Court of Appeals compounded this error by finding that the county court did in fact allocate $20,000 to the survival claim. She claims that this conclusion was improper and establishes a "troubling" precedent.[8] As noted above, the Court of Appeals based its conclusion upon William's assertion that the underinsurance carrier had allotted $20,000 to the survival claim. Thus, Griffin contends that the Court of Appeals' opinion would permit a personal representative to settle multiple claims and allocate the proceeds to the claim from which he or she would derive the greatest benefit. In order to provide some context to this claim, we briefly recall governing principles of law.

## General Principles

[4] A wrongful death action and a survival action are two distinct causes of action which may be brought by a decedent's personal representative.[9] Although they are frequently joined in a single action, they are conceptually separate.[10]

[5] A wrongful death action is brought on behalf of the widow or widower and next of kin for damages they have sustained as a result of the decedent's death.[11] Such damages include the pecuniary value of the loss of the decedent's support, society, comfort, and companionship.[12]

[6] In contrast, an action under our survival statute[13] is the continuance of the decedent's own right of action which he or

---

[8] Memorandum brief for appellant in support of petition for further review at 3.

[9] See *Corona de Camargo v. Schon*, 278 Neb. 1045, 776 N.W.2d 1 (2009).

[10] See *id.*

[11] See, § 30-810; *Reiser v. Coburn*, 255 Neb. 655, 587 N.W.2d 336 (1998).

[12] See *Reiser, supra* note 11.

[13] Neb. Rev. Stat. § 25-1401 (Reissue 2008).

she possessed prior to his or her death.[14] The survival action is brought on behalf of the decedent's estate and encompasses the decedent's claim for predeath pain and suffering, medical expenses, funeral and burial expenses, and any loss of earnings sustained by the decedent, from the time of the injury up until his or her death.[15]

In a typical case, the same individuals may stand to recover in both a wrongful death and survival action. The decedent's next of kin may also be the beneficiaries of the survival claim under the decedent's will or the laws of intestate succession.

But as this appeal illustrates, the typical case does not always hold true. As Ellen's widower, William would share in any recovery from the wrongful death claim. But he would not benefit from the survival claim brought on behalf of Ellen's estate. Any proceeds from the survival claim would pass solely to Griffin as Ellen's residuary beneficiary. Thus, a personal representative in similar circumstances would have the incentive to maximize the recovery for the wrongful death claim.

Based upon this conflict of interests, Griffin argues that the Court of Appeals' opinion permits a personal representative to allocate settlement proceeds in a manner which benefits him or her personally, at the expense of the estate. With these assertions in mind, we turn to Griffin's first assignment of error.

### Characterization of $20,000

Griffin assigns that the Court of Appeals "improperly stepped into the role of fact finder"[16] by characterizing the

---

[14] See *Rhein v. Caterpillar Tractor Co.*, 210 Neb. 321, 314 N.W.2d 19 (1982).

[15] See, *Reiser, supra* note 11; *Nelson v. Dolan*, 230 Neb. 848, 434 N.W.2d 25 (1989); *Rhein, supra* note 14.

[16] Memorandum brief for appellant in support of petition for further review at 5.

$20,000 she received as a distribution for the survival claim. As previously discussed, the Court of Appeals concluded that the $20,000 was a distribution for the survival claim, because $20,000 was the amount that the underinsurance carrier had allotted for Ellen's pain and suffering.

We reject Griffin's assertion that the Court of Appeals engaged in improper factfinding. The Court of Appeals reasoned that the county court had allocated $20,000 to the survival claim based upon the allegations in William's petition. In our view, an appellate court does not engage in improper factfinding when it merely attempts to identify the actions taken by the court below.

[7] However, we find no basis to support the Court of Appeals' conclusion. Although William alleged that the underinsurance carrier had allotted $20,000 for Ellen's pain and suffering, his allegations were not evidence. No settlement agreement was offered or received into evidence by the county court. There is no evidence of any allocation of the settlement proceeds between the wrongful death and survival claims. We have consistently stated that a bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered.[17]

Moreover, the county court did not indicate that the $20,000 was a distribution for the survival claim. Rather, it explained only that the $20,000 had been suggested in William's reply brief. And the county court expressly stated that it was distributing all of the proceeds pursuant to § 30-810. Without an indication to the contrary, we will not speculate that the county court deviated from its express statements. And we agree that it was improper for the Court of Appeals to do so.

### Distribution of Proceeds

Griffin assigns that the Court of Appeals erred in affirming the county court's distribution of the proceeds. We agree.

---

[17] See, e.g., *Richards v. McClure*, 290 Neb. 124, 858 N.W.2d 841 (2015).

In distributing the proceeds solely pursuant to § 30-810, the county court's distribution failed to conform to the law and was not supported by the evidence.

Based upon the evidence received by the county court, it is clear that a portion of the proceeds represented the settlement of the survival claim. The complaint filed against the driver of the other vehicle sought compensation for Ellen's "injuries under the laws of the State of Nebraska." And it alleged that Ellen had experienced pain and suffering and incurred medical expenses prior to her death. Additionally, the underinsurance carrier was informed via a letter that Ellen had incurred medical expenses of $214,754.77.

Ellen's pain and suffering and medical expenses were relevant only to the survival claim. These damages would not have been recoverable in a wrongful death action. Thus, it is apparent that the proceeds also represented the settlement of the survival claim. But contrary to this evidence, the county court distributed all of the proceeds pursuant to § 30-810. And it determined that it was required to do so.

We see no basis for the county court's conclusion. We have never held that proceeds from a survival claim are subject to § 30-810. Indeed, our earlier review demonstrates that this proposition cannot be correct. Each action addresses a separate injury. And the class of beneficiaries of each action is also conceptually distinct. The survival action continues a decedent's cause of action beyond death to redress the decedent's estate for the decedent's injuries that occurred before death.[18] A wrongful death action permits statutorily designated survivors of the decedent to bring a cause of action to redress their injuries resulting from the decedent's death.[19]

Moreover, we have previously observed that § 30-810 provides no basis upon which to recover a decedent's own

---

[18] See 25A C.J.S. *Death* § 23 (2012).

[19] See *id.*

damages.[20] And we have held that as its own cause of action, a survival claim is not subject to the 2-year limitations period of § 30-810.[21]

Because a survival action is separate and distinct from the wrongful death statutes, we see no logical reason to conclude that the proceeds from a survival claim must be distributed pursuant to § 30-810. The Montana Supreme Court has recognized that (1) a survival action is personal to the decedent for damages suffered by the decedent between the wrongful act and his or her death and (2) recovery for such damage belongs to the decedent's estate and is administered as an estate asset.[22] In contrast, a wrongful death action seeks damages that pertain to the personal loss of the survivors.[23] These principles are consistent with our statutory framework, and we reach the same result.

We therefore conclude that in distributing all of the proceeds pursuant to § 30-810, the county court's distribution failed to conform to the law. Thus, the cause must be remanded to the county court to allocate the settlement proceeds between the wrongful death and survival claims. Only those proceeds representing the wrongful death claim are subject to § 30-810. The proceeds for the survival claim are subject to distribution as a part of the assets of Ellen's probate estate. Additionally, we note that neither party contests the payment of the attorney fees and medical liens from the gross settlement proceeds. Thus, the allocation should occur after the payment of those expenses.

We acknowledge, as Griffin suggests, the danger of abuse that exists in this and similar cases. A personal representative who stands to benefit personally from one claim but not the

---

[20] See *Nelson, supra* note 15.

[21] See *Corona de Camargo, supra* note 9.

[22] See *In re Estate of Bennett*, 371 Mont. 275, 308 P.3d 63 (2013).

[23] See *id.*

other may influence an allocation between a survival claim and a wrongful death claim by the payer of the settlement proceeds. And we note that other courts have recognized a conflict in similar scenarios when a personal representative possesses an interest adverse to the estate.[24]

However, we need not address the matter here. William did not present any evidence of an allocation of the proceeds to the county court. Although he alleged that an allocation had been made, he offered no proof of it. Thus, the county court was free to allocate all of the proceeds between the respective claims. If, upon remand, a conflict becomes apparent, the county court will need to resolve the issue in a way that prevents the conflict from affecting the court's allocation.

### Remaining Assignments of Error

Griffin assigns that the Court of Appeals erred in determining that the collateral source rule was irrelevant and in rejecting her claim that she was entitled to the full value of Ellen's medical expenses. These claims ultimately address the amount to be allocated to the survival claim. We decline to determine the issue in the first instance.

However, we reject Griffin's assertion that she was automatically entitled to the full value of Ellen's medical expenses. While it is clear that the medical bills were used in obtaining the settlement proceeds, Ellen's medical expenses are only one piece of evidence as to the value to be given to the survival claim. In making its allocation, the county court must consider all of the evidence and divide the proceeds between the wrongful death and survival claims accordingly. We will not comment on the weight to be given to any one piece of evidence.

---

[24] See, *Continental Nat. Bank v. Brill*, 636 So. 2d 782 (Fla. App. 1994); *Readel v. Towne*, 302 Ill. App. 3d 714, 706 N.E.2d 99, 235 Ill. Dec. 839 (1999).

## CONCLUSION

Based upon the evidence received by the county court, it is clear that the proceeds included the settlement of the survival claim. And we reject the proposition that the proceeds for the survival claim were subject to distribution under § 30-810. We therefore reverse the decision of the Court of Appeals and remand the cause with directions to remand to the county court with directions to allocate the settlement proceeds between the wrongful death and survival claims, to direct distribution of the wrongful death settlement proceeds in accordance with § 30-810, and to direct distribution of the survival claim proceeds to Griffin as the sole beneficiary of Ellen's residuary probate estate.

Reversed and remanded with directions.

Stephan, J., not participating.