**IN THE COURT OF APPEALS OF IOWA**

No. 17-1033
Filed September 27, 2017

**IN THE INTEREST OF C.H.,**
**Minor Child,**

**B.H., Mother,**
    Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Louise M. Jacobs,

District Associate Judge.


        A mother appeals an order terminating her parental rights.  **AFFIRMED.**



        John Hardy, Des Moines, for appellant mother.

        Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

        Karl Wolle of the Juvenile Public Defender's Office, Des Moines, for minor

child.



        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

A mother appeals a juvenile court order terminating her parental rights to her child, C.H., born in 2016.[1] She argues the juvenile court erred in terminating her parental rights, concluding termination was in the best interest of the child, and declining to apply a statutory exception to termination.[2]

The mother and child came to the attention of the Iowa Department of Human Services (DHS) in July 2016 upon information that the mother and other occupants of the family residence were using methamphetamine while caring for the child. DHS discovered the mother was the subject of an active arrest warrant. The mother was arrested, and an order removing the child from her legal custody was entered. Shortly thereafter, the child tested positive for methamphetamine exposure. The child was adjudicated a child in need of assistance (CINA) in August 2016. In June 2017, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) and (*l*) (2017).

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile

---

[1] The father's parental rights were also terminated pursuant to, among other grounds, his consent.

[2] The mother also states the court erred in denying her request for a six-month permanency extension. Because she provides no argument on this assignment of error, we consider the argument waived. *See* Iowa R. App. P. 6.903(2)(g)(3); *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."); *see also Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments."); *Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume.").

court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

As noted, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) and (*l*). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

Under section 232.116(1)(h), the court may terminate parental rights if it finds the State has proved by clear and convincing evidence the child (1) is three years of age or younger; (2) has been adjudicated CINA, (3) has been removed from the physical custody of the parent for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the parent's custody at the time of the termination hearing.

The mother only challenges the State's establishment of the final element. She argues, because of the stability she has attained and the progress she has made with her substance-abuse issues, the juvenile court should have concluded the child could have been safely returned to her at the time of the termination hearing.

The mother has a lengthy history of illegal substance abuse, criminal behavior, and surrounding herself with individuals who engage in the same. At the time of the termination hearing, the mother was undergoing inpatient-

recovery treatment at Clearview Recovery as a condition of her probation in a criminal matter. She had completed six weeks of the four-to-six-month program and was on "stage one" of three stages. She obviously had a long way to go in the program, and whether she would be successful was yet to be seen, especially in light of her prior completion of other substance-abuse programs, all of which were followed by relapse upon her return to the community. Apparently based on the mother's initial progress at Clearview, one of the substance-abuse counselors testified that, at the time of the hearing, the mother was ready to progress to semi-supervised visits with the child rather than fully-supervised visits. The mother also testified to her belief that she was ready to "progress" the child back into her care by transitioning "to semi-supervised and stuff like that." *Cf. In re M.R.*, No. 14-1642, 2014 WL 7343520, at *2 (Iowa Ct. App. Dec. 24, 2014) (concluding a parent's admission that the child cannot currently be returned to their custody is sufficient for termination).

The lynchpin of the mother's argument that the child could be returned to her custody at the time of the termination hearing is that she sought treatment at Clearview, made progress in her treatment, and had been sober since April 12, 2017. However, the record reveals that on that date, she showed up to a meeting with her probation officer while under the influence of drugs, was arrested, and completion of the Clearview program was made a condition of her continued probation. She declined to seek substance-abuse treatment prior to this occurrence during the nine-month period between removal and her arrest,

even after the permanency goal was amended from reunification to termination in March 2017. The juvenile court ultimately concluded:

> It would be inappropriate for [the child] (who is at the age when attachment and bonding issues are particularly important) to be placed with [the mother] at Clearview until [the mother] demonstrates more than an initial enthusiasm in the program. Sustained progress has not yet been demonstrated.

We agree with this assessment. At the time of the termination hearing, the mother was still in the early stages of the mandatory recovery program. Until the mother completes the program and demonstrates her ability to maintain her sobriety in an unrestrictive setting, the same concerns that existed at the time of the CINA adjudication will continue to exist. We agree with the juvenile court that the evidence is clear and convincing that the child could not be returned to the mother's care at the time of the termination hearing.

We next consider whether "termination of parental rights would be in the best interest of the child under section 232.116(2)." *M.W.*, 876 N.W.2d at 224. The mother again cites to her progress at Clearview in support of her argument that termination was not in her child's best interests. Only time can tell if the mother will be able to conquer her drug addictions and become a suitable parent. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). "[A]t some point, the rights and needs of the child[] rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d

297, 300 (Iowa Ct. App. 2009). C.H. was removed from his mother's custody at the young age of three months. Throughout the life of the case he has been living with relatives who are now licensed to adopt him. According to DHS, C.H. is strongly bonded with his current caregivers; he is thriving under their supervision; and they meet all of his physical, emotional, mental, and basic care needs. We conclude termination was in his best interests. *Cf. M.W.*, 876 N.W.2d at 224–25 (concluding termination was in best interests of children where children were well-adjusted to home with their relative caregivers, the caregivers were "able to provide for their physical, emotional, and financial needs," and the relatives were prepared to adopt the children).

"Once we have established that the termination of parental rights is in the child['s] best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *Id.* at 225. The mother argues "[t]he court should not have terminated [her] rights when [C.H.] remained in the custody of relatives and a bond existed between" her and C.H. *See* Iowa Code § 232.116(3)(a), (c). The application of these exceptions is "permissive, not mandatory." *M.W.*, 876 N.W.2d at 225 (quoting *A.M.*, 843 N.W.2d at 113). We agree with the juvenile court that the permissive exceptions should not be applied in this case. C.H. needs permanency and his connection with his current caregivers is stronger than his connection with his mother. The mother's bond with C.H. is quite limited considering C.H.'s young age and the facts that he has spent most of his life out of the mother's care, he has been in the same home since removal, he has developed a bond with his relative

placements, and they are willing to adopt him. *Cf. In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011).

We agree with the juvenile court that the permissive exceptions should not be applied in this case. We affirm the juvenile court order terminating the mother's parental rights.

**AFFIRMED.**